739 A.2d 114

**Timothy J. HAYES, M.D., Appellee,**

**v.**

**MERCY HEALTH CORPORATION, t/a Mercy Catholic Medical Center a/k/a Fitzgerald Mercy Hospital, Appellant.**

Supreme Court of Pennsylvania.

Argued April 28, 1999.

Decided Oct. 1, 1999.

Brian M. Peters, Jonathan B. Sprague, Philadelphia, for Mercy Health Corp.

Richard A. Sprague, Geoffrey R. Johnson, Joseph R. Podraza, Jr., Philadelphia, for Timothy Hayes, M.D.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION*

SAYLOR, Justice.

The issue before us is whether the confidentiality provision of the Peer Review Protection Act ("the Act"), 63 P.S. §§ 425.1–425.4, applies to an internal hospital proceeding in which a physician challenges his own peer review process. We conclude that it does not, and therefore affirm the trial court.

In October of 1995, Appellant Mercy Catholic Medical Center ("the Hospital") summarily suspended the clinical privileges of Appellee Timothy J. Hayes, M.D. ("Dr. Hayes"), a general surgeon. The apparent basis of the Hospital's action was, in its words, "a serious issue involving patient care" that resulted in a medical malpractice action. Dr. Hayes requested a hearing before a peer review panel, as was his right under the Hospital's bylaws. Numerous procedural complications ensued, leading both parties to seek relief from the trial court. In July of 1997, after hearings had been held, the peer review panel unanimously recommended that the suspension be terminated "because the facts [of the underlying case] do not support suspension."

Pursuant to the bylaws, the panel forwarded its recommendation to the Hospital's Medical Board. At a meeting that was held in September of 1997, and recorded on audiotape, the Medical Board approved the panel's recommendation with one change: instead of stating that the facts "do not support suspension," the Medical Board stated that the facts "[do] not support *continued* suspension" (emphasis added). The Medical Board sent its recommendation to the Hospital's Board of Directors for final action at its next meeting, scheduled for September 25, 1997.

Dr. Hayes sought to challenge the Medical Board's recommendation because he feared that the Board, by advising against "continued" suspension, was implying that the initial suspension had been appropriate. In addition, a confidential source had allegedly informed him that some members of the Medical Board had acted in bad faith in making such recom-

mendation. Wishing to learn what had transpired at the Medical Board's meeting, Dr. Hayes asked the trial court to enjoin the Hospital from destroying the tape recording of the meeting and to order the Hospital to furnish a copy of the tape to him. The Hospital agreed to preserve the tape, but refused to provide a copy to Dr. Hayes. When the trial court ordered it to do so, the Hospital filed a notice of appeal with the Commonwealth Court, along with an emergency application for a stay of the trial court's order.

On September 25, 1997, the Commonwealth Court granted a temporary stay. That same day, the Hospital's Board of Directors voted to accept the recommendation of the Medical Board and reinstate Dr. Hayes' clinical privileges. In an unreported opinion filed July 14, 1998, the Commonwealth Court quashed the Hospital's appeal as moot, noting that Dr. Hayes had obtained the reinstatement of his privileges and that the Board of Directors' decision to that effect was not subject to further hearing or review. The Hospital filed a petition for allowance of appeal, Dr. Hayes joined in that request, and allowance of appeal was granted.[1]

Preliminarily, we observe that the Commonwealth Court erred in concluding that the present appeal is moot. Although Dr. Hayes' clinical privileges have been restored, his record continues to reflect a lengthy suspension of those privileges. Pursuant to the federal Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. §§ 11101–11152, the Hospital is required to supply information concerning Dr. Hayes' suspension to a national data bank, and any hospital at which Dr. Hayes may seek employment or clinical privileges in the future will be required to review the information contained

---

1. In October of 1997, Dr. Hayes, his wife, and his professional corporation commenced a civil action against the Hospital and others in the Court of Common Pleas of Philadelphia County. By a notice of records deposition, the plaintiffs indicated that they sought to obtain the audiotape of the Medical Board meetings. In response, the Hospital filed a motion for a protective order. The trial court denied the motion but certified its order for immediate interlocutory appeal pursuant to 42 Pa.C.S. § 702(b). The Commonwealth Court granted permission to appeal and stayed oral argument pending our disposition of the present appeal.

in the data bank.[2] *See* 42 U.S.C. §§ 11133(a), 11135(a); *see generally* Susan L. Horner, *The Health Care Quality Improvement Act of 1986: Its History, Provisions, Applications and Implications,* 16 AM. J.L. & MED. 455 (1990). Thus, the failure of the Hospital's Board of Directors to state that Dr. Hayes' initial suspension, not merely his "continued" suspension, was unwarranted may, if left unchallenged, continue to have a deleterious effect on Dr. Hayes' medical career. *See Cooper v. Delaware Valley Med. Ctr.,* 539 Pa. 620, 628–29, 654 A.2d 547, 551 (1995) (noting that "[f]inding gainful employment in the hospital setting after a poor review is unlikely as a result of the provisions of the [HCQIA]"). Because our resolution of the matter at issue will have a practical effect on Dr. Hayes' ability to challenge the Board of Directors' decision, and thus on Dr. Hayes' professional future, this appeal is not moot. *See Sonder v. Sonder,* 378 Pa.Super. 474, 521, 549 A.2d 155, 179 (1988) (*en banc* ) (stating that case is moot when determination sought could not have any practical effect on existing controversy).[3]

■■■ At issue is the following provision of the Act:
The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee. . . .

63 P.S. § 425.4 ("Section 4"). In the interpretation of a statute, our overriding concern is to ascertain and effectuate the legislature's intent in enacting the statute. 1 Pa.C.S. § 1921(a); *Pennsylvania Financial Responsibility Assigned*

---

**2.** A hospital that fails to comply with this requirement will be "presumed to have knowledge of any information reported under this subchapter ... with respect to the physician or practitioner" against whom a medical malpractice action is subsequently brought. 42 U.S.C. § 11135(b).

**3.** Although this matter could be remanded to the Commonwealth Court, in the interest of judicial economy we will instead decide the substantive issue before us. *See generally Barbour v. Commonwealth, Dept. of Transp., Bureau of Driver Licensing,* 557 Pa. 189, 732 A.2d 1157 (1999).

*Claims Plan v. English,* 541 Pa. 424, 430, 664 A.2d 84, 87 (1995); *Cooper,* 539 Pa. at 632, 654 A.2d at 553. When the words of a statute are clear and free from ambiguity, the drafters' intent is to be gleaned from those words. 1 Pa.C.S. § 1921(b); *English,* 541 Pa. at 430, 664 A.2d at 87. We may not disregard the letter of the statute under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Cooper,* 539 Pa. at 632, 654 A.2d at 553.

Significantly, Section 4 precludes the disclosure of peer review proceedings and recordings in certain specified circumstances, namely, in "civil action[s] . . . arising out of the matters which are the subject of evaluation and review by such committee." These are words of limitation; "had the legislature intended the privilege to be absolute, it could have simply left these words out of the statute." *Sanderson v. Frank S. Bryan, M.D., Ltd.,* 361 Pa.Super. 491, 498, 522 A.2d 1138, 1142 (1987), *appeal denied,* 517 Pa. 624, 538 A.2d 877 (1988). Dr. Hayes contends that, as his internal challenge to the Medical Board's recommendation did not arise out of the matters which were the subject of evaluation and review by the peer review committee, Section 4 does not preclude him from obtaining a copy of the tape recording of the Medical Board's deliberations.[4] We agree.

In the present case, the subject of the peer review proceeding was the quality of medical care provided by Dr. Hayes to a particular patient. If, as in fact happened, the patient in question were to sue Dr. Hayes and/or the Hospital to recover damages for Dr. Hayes' allegedly substandard care, the confidentiality provision of Section 4 would apply, as such a lawsuit would "arise out of" the matter—the quality of care rendered by Dr. Hayes—which was the subject of the peer review proceeding.[5] *See Sanderson,* 361 Pa.Super. at 501, 522 A.2d

---

4. The phrase "arising out of" is not defined in the Act or in Title 1 of the Pennsylvania Consolidated Statutes, nor have our appellate courts provided a precise definition of the phrase as it is used in the Act. *Cf. McCabe v. Old Republic Ins. Co.,* 425 Pa. 221, 224, 228 A.2d 901, 903 (1967) (stating that phrase "arising out of," used in insurance policy exclusion, denoted "but for" or "cause and result" relationship).

5. Such a lawsuit would also be, without question, a "civil action" for purposes of Section 4, since the Pennsylvania Consolidated Statutes

at 1143 (holding that Section 4 precludes medical malpractice plaintiff from discovering peer review information related to his own and other patients' cases).

Dr. Hayes' challenge to the proceeding, however, did not arise out of that substantive issue of patient care. In his emergency petition seeking preservation of the tape, Dr. Hayes asserted the following:

> It is believed and therefore averred that the revision in Dr. Hayes' recommendation [from the conclusion that the facts did not support suspension, to the conclusion that the facts did not support *continued* suspension] was unlawfully and improperly accomplished through coercion condoned and promoted by the Hospital. Moreover, it is believed and therefore averred that evidence of this coercion (and, hence, unmitigated subversion of Dr. Hayes' minimum due process rights) exists on the tape employed to record the Medical Board's meeting.

Dr. Hayes' counsel expanded on these allegations at the hearing on his request for the tape, where he maintained that "[unnamed persons] who were present at [the] Medical Board meeting ... have made it clear that there were some physicians there with ulterior motives, in fact, two physicians who are responsible for the summary suspension...." The ulteri-

define "action" as a "suit or proceeding in any court of this Commonwealth." 1 Pa.C.S. § 1991. The Hospital argues that the present proceeding is a civil action because, although the proceeding began as an internal administrative appeal, Dr. Hayes eventually sought and obtained the desired relief—an order directing the Hospital to furnish him with a copy of the tape—by filing the present action in equity, No. 96–776, in the Court of Common Pleas of Delaware County. In essence, the Hospital argues that even though a complaining physician may be entitled to obtain peer review information in an internal hospital proceeding, nevertheless if the hospital's obstinate refusal to provide such information forces the physician to seek equitable relief in a court of law, the physician thereby forfeits whatever right he may otherwise have had to obtain the information. Such argument violates the presumption that the legislature, in enacting a statute, does not intend an absurd or unreasonable result. 1 Pa.C.S. § 1922(1); *English*, 541 Pa. at 430–31, 664 A.2d at 87. In any event, the present proceeding, even if it were to be considered a "civil action," is not one "arising out of the matters which are the subject of evaluation and review by [the peer review] committee." *See infra.*

or motive of those physicians, according to Dr. Hayes' counsel, was "fabricating a record to protect themselves" against an eventual lawsuit alleging the destruction of Dr. Hayes' professional reputation.[6]  In short, Dr. Hayes' concern was not the underlying medical matter which led to his suspension, but rather the fairness and integrity of the Medical Board's review of that suspension.

As the Superior Court has pointed out, it was a similar concern on the part of the legislature which led it to reject a more comprehensive draft of Section 4. *Sanderson*, 361 Pa.Super. at 500, 522 A.2d at 1143.  That draft provided as follows:

> All data and information acquired by a review organization, in the exercise of its duties and functions, shall be held in confidence and shall not be disclosed to any person except to the extent that may be necessary to carry out the purposes of the review organization and shall not be admissible as evidence in any other civil proceeding.

*Id.* at 500, 522 A.2d at 1142 (quoting Hearing on H.B. No. 1729, 158 Pa. Legis. J.—House at 4438 (1974)).

> The [legislative] discussion [of this alternative draft] centered around the potential for misusing the peer review process to make false charges against the person subject to review.  Though such action is prohibited under section three of the Act [63 P.S. § 425.3[7]], a strict application of

---

**6.**  Our purpose in reciting these allegations is merely to illustrate Dr. Hayes' reasons for requesting the tape.  We express no view as to the veracity of the allegations.

**7.**  Section 3 of the Act affords limited immunity from civil and criminal liability to participants in the peer review process.  *Cooper*, 539 Pa. at 631, 654 A.2d at 552.  Immunity does not apply, however, if an individual is motivated by malice, *id.* at 633, 654 A.2d at 553, or deliberately provides false information to a peer review committee, *Steel v. Weisberg*, 368 Pa.Super. 590, 598, 534 A.2d 814, 818 (1987), *appeal dismissed as improvidently granted*, 525 Pa. 503, 582 A.2d 648 (1990).  This Court has observed that lawsuits originating in the peer review setting are judicially cognizable if based on legitimate contract and tort theories.  *Cooper*, 539 Pa. at 631, 654 A.2d at 552; *see also Steel*, 368 Pa.Super. at 598–99, 534 A.2d at 818–19 (concluding that if information sought by plaintiff-physician in defamation action were to be held confidential under Section 4, individual who deliberately pro-

section four, as drafted, would have prohibited the person being reviewed from discovering the nature of the charge against him as well as the identity of the person making the charge. Concern was expressed that a "star-chamber type inquiry" would evolve. Hearing, at 4438–39 (statement of Representative McCue).

*Id.* at 500, 522 A.2d at 1142–43. Faced with these concerns, the legislature declined to preclude the disclosure of peer review information in "any other civil proceeding," choosing instead to limit such preclusion to "civil actions ... arising out of the matters which are the subject of evaluation and review by [the peer review] committee."

Thus, the intent of the legislature, as revealed by the plain language of Section 3 and confirmed by its legislative history, was to prevent the disclosure of peer review information to outside parties seeking to hold professional health care providers liable for negligence, while at the same time ensuring that such guarantee of confidentiality did not operate to shield from discovery those rare instances in which the peer review process was misused. Dr. Hayes sought to learn, through internal hospital proceedings, whether such misuse had occurred in his case. Section 4 does not bar him from obtaining a copy of the audiotape in issue for such purpose.

Accordingly, we reverse the order of the Commonwealth Court quashing the present appeal as moot and affirm the trial court's order directing that the Hospital provide a copy of the tape to Dr. Hayes, without prejudice to the Hospital's right to seek a protective order ensuring confidentiality and limiting disclosure of the tape's contents to such uses as would be consistent with this Opinion.[8]

Justice NEWMAN files a Concurring and Dissenting Opinion.

vided false information to peer review committee would be shielded from liability despite opposite legislative intent expressed in Section 3).

**8.** The concurring and dissenting opinion expresses the view that confidentiality and limited use conditions would unduly restrict Dr. Hayes' ability to utilize peer review materials in his separate civil proceeding

NEWMAN, Justice, concurring and dissenting.

The majority holds that the confidentiality provision of the Peer Review Protection Act ("Section 4"), 63 P.S. § 425.4, does not prevent disclosure of records of peer review proceedings in all civil actions, and it concludes by reversing the Order of the Commonwealth Court that quashed the Hospital's appeal as moot, and by affirming the Order of the Court of Common Pleas 'of Delaware County (trial court). I write separately because, although I agree with the majority that the Hospital must provide Dr. Hayes with a copy of the audiotape of his own peer review proceeding for use in his challenge of that proceeding, I disagree with the restrictions that the majority places on the Order of the trial court for production.

Although the majority thoughtfully explains in its discussion that Section 4 provides only limited protection to records of peer review proceedings, I can not agree with the conclusion of the majority that we must condition the production of the audiotape with burdensome restrictions. The Order of the trial court did not limit the purposes for which Dr. Hayes could obtain the peer review information; it simply ordered that "[the Hospital] shall produce a copy to [Dr. Hayes] immediately."[1] Order of the Trial Court, September 24, 1997.

against the Hospital and others. Such provisions, however, are implicated by the very nature of the disclosure of materials otherwise subject to Section 4 in order to avoid vitiating its protective purpose. *See* 63 P.S. § 425.4 ("[t]he proceedings and records of a review committee shall be held in confidence ...”). Moreover, we do not, as suggested in the concurring and dissenting opinion, intimate that discovery of the audiotape is limited solely to Dr. Hayes' challenge to the Medical Board's recommendation. The question of Dr. Hayes' ability to utilize the peer review materials in his civil proceeding is the subject of a separate appeal before the Commonwealth Court, which has been stayed pending decision in this case.

1. As discussed by the majority, in a separate civil action filed by Dr. Hayes, his wife, and his professional corporation, *Hayes v. Mercy Health System*, Court of Common Pleas of Philadelphia, October Term 1997, No. 366, the trial court ordered the Hospital's Custodian of Records to "produce any and all requested audiotapes and transcripts within his or her possession, custody or control." Order of the Trial Court, August 19, 1998. The Hospital and the other defendants filed an interlocutory appeal to the Commonwealth Court to stay the trial court's discovery

The Peer Review Act promotes a legislative goal of encouraging self-policing by the medical profession to improve the quality of health care. *Cooper v. Delaware Valley Medical Center*, 539 Pa. 620, 628, 654 A.2d 547, 551 (1995). The legislature incorporated confidentiality and liability immunity provisions to "foster free and frank discussions by review organizations." *Steel v. Weisberg*, 368 Pa.Super. 590, 597–98, 534 A.2d 814, 818 (1987), *appeal dismissed as improvidently granted*, 525 Pa. 503, 582 A.2d 648 (1990). However, as the majority notes, the legislature did not intend to create an absolute privilege. Op., at 117 (citing *Sanderson v. Frank S. Bryan, M.D., Ltd.*, 361 Pa.Super. 491, 498, 522 A.2d 1138, 1141 (1987), *appeal denied*, 517 Pa. 624, 538 A.2d 877 (1988)); *accord Steel*, 368 Pa.Super. at 598–600, 534 A.2d at 818–19. Section 4 evidences the legislature's struggle to protect peer review participants from negligence actions, while not condoning misuse of their review power.

Once a tribunal has determined the exact nature of the matters that were subject to evaluation and review by a peer review committee, the court must preclude production of peer review records, but only in civil actions arising out of the specific subject matters. Thus, barring other restrictions, such as those established by rules of evidence or civil procedure, Dr. Hayes may obtain the information for use in any civil action that does not arise out of matters that have been or are before the peer review committee for its evaluation. The subject matter of the peer review committee's evaluation and review of Dr. Hayes is his provision of medical care to a particular patient. The majority concludes that the Hospital could assert its confidentiality privilege in any civil action that relates to Dr. Hayes' provision of medical services. I agree that Section 4 prevents the discovery and use of peer review information by all parties involved in medical malpractice

Order, and the plaintiffs sought, and the trial court granted, a stay of the proceedings of the second civil action until the Commonwealth Court rules on the defendants' appeal. Order of the Trial Court, October 13, 1998. The Commonwealth Court accepted the defendants' petition to appeal the discovery Order but stayed oral argument pending our decision in the case, *sub judice*. Order of the Commonwealth Court, October 26, 1998.

actions where the peer review concerned the quality of a physician's medical services. *See Sanderson,* 361 Pa.Super. at 501, 522 A.2d at 1143. However, the confidentiality provision would not automatically proscribe Dr. Hayes' discovery and use of the audiotape in other civil actions.[2]

Though Dr. Hayes' challenge of his suspension of clinical privileges does not directly implicate the liability immunity provision of the Peer Review Act ("Section 3"), 63 P.S. § 425.3, Section 3 is related to his desire to discover what transpired during his peer review. The immunity from liability is limited; Section 3 permits lawsuits against individuals who knowingly or recklessly make false statements or act maliciously in peer review proceedings. *See Cooper,* 539 Pa. at 631–32, 654 A.2d at 552–53. The Peer Review Act offers no shelter to peer review participants who make false or malicious statements about a physician. Whenever a doctor challenges the veracity of or motivation behind statements made during his own peer review proceeding in a civil action, he or she must have an opportunity to discover all of the information that affected the peer review committee's decision. If Section 4 were to prevent doctors from discovering records of their own peer reviews to recover damages for tortious conduct perpetrated against them, the exception to Section 3 liability immunity would serve little function. *See Steel,* 368 Pa.Super. at 598–600, 534 A.2d at 818–19.

Dr. Hayes is seeking the production of the audiotape for use in his challenge of his peer review proceedings and in another civil action. Because the latter discovery request is part of a pre-complaint motion, the exact nature of his action is not yet apparent. However, if Dr. Hayes wishes to obtain the peer review information for a defamation or contract claim, his ability to obtain the material must not be fettered by Section 4

2. While professional health care providers generally assert the Section 4 privilege in medical malpractice cases, courts have considered the confidentiality provision in other types of cases. *See Cooper,* 539 Pa. at 625–26, 654 A.2d at 549–50 (federal anti-trust law, federal and state due process and equal protection rights, and various state tort and contract theories); *Steel,* 368 Pa.Super. at 592, 534 A.2d at 815 (defamation action).

of the Peer Review Act. *Cooper v. Delaware Valley Medical Center*, 428 Pa.Super. 1, 23–24, 630 A.2d 1, 12 (1993), *aff'd*, 539 Pa. 620, 654 A.2d 547 (1995) (noting that doctor was not "precluded from asking any questions or discovering any material concerning his own peer review"). Dr. Hayes has a right to protect his reputation, and we should not hamper his efforts, should he choose to hold participants accountable for any fraudulent or malicious acts.

The majority has erred by narrowing the Order of the trial court. If the majority were truly interested in advancing judicial economy, it would not have intimated that Dr Hayes' discovery of the audiotape is limited solely to his challenge of the Medical Board's recommendation to the Board of Directors. Such a limitation will certainly encourage additional, unnecessary litigation. Because the restriction suggested by the majority is inconsistent with the Peer Review Act, absent from the Order of the trial court, and pointlessly burdensome to Dr. Hayes, I join the majority in its decision to affirm the Order of the trial court but dissent concerning any restrictions it attaches to the Order.