Shirley C. **WEINER,** as Executrix of the Estate of Leon J. Weiner, and Shirley C. Weiner, Individually and In Her Own Right, Appellant,

v.

Robert S. **FISHER,** M.D., Appellee.

Superior Court of Pennsylvania.

Argued Nov. 17, 2004.

Filed April 1, 2005.

Glenn C. McCarthy, Philadelphia, for appellant.

Charles A. Fitzpatrick III, Philadelphia, for appellee.

BEFORE: HUDOCK, TODD and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 We interpret the Medical Care Availability and Reduction of Error (MCARE) Act[1] relating to the qualifications of experts. First we address the Act's time frame requirement that the testifying expert be "engaged in or retired within the previous five years from active clinical practice or teaching." Next, we explore the meaning of the active teaching requirement under the Act.

¶ 2 In this case the court granted appellee-defendant's motion for a non suit after finding appellant-plaintiff's expert unqualified. We vacate the trial court's order and remand.

¶ 3 Leon Weiner, M.D.,[2] as a patient, sought medical advice from gastroenterologist Robert Fisher, M.D. in March 1990, May 1994, and June, 1998 for various gastrointestinal symptoms. Although Dr. Fisher ordered a number of medical tests during this eight year period (including endoscopy and colonscopy) and diagnosed the patient with intestinal metaplasia, pernicious anemia, and atrophic gastritis, he found no evidence of malignancy. Approximately seven months after his final consultation with Dr. Fisher, Dr. Weiner was diagnosed with gastric cancer by another gastroenterologist and underwent a total

---

1. The relevant statutory provisions are found in 40 P.S. § 1303.512 (Expert Qualifications), which became effective on May 19, 2002.

2. Dr. Weiner was a physician specializing in gerontology.

gastrectomy. He was treated for this malignancy until his death in February 2000.

¶ 4 Mrs. Weiner, as executrix of her husband's estate, filed a complaint in wrongful death and survival actions, naming Dr. Fisher as the defendant. The complaint also included an individual action for loss of consortium. The thrust of the complaint was that Dr. Fisher was negligent in failing to recommend regular and complete follow-up examinations and tests for gastric malignancy, given the patient's medical history and his symptoms.

¶ 5 At trial on March 2, 2003, the court refused to qualify plaintiff-appellant's expert witness, Dr. William Bisordi, who was to testify as to the relevant standard of care and Dr. Fisher's alleged breach. The court held that Dr. Bisordi was not qualified to testify, as he was not currently engaged in active clinical practice or teaching in the relevant area and he had retired from these activities in 1995, more than five years before trial. The court declared a nonsuit. After the court denied appellant's post-trial motion to remove the nonsuit on July 24, 2003, this timely appeal followed.

¶ 6 Appellant raises three issues on appeal, all of which concern section 512 of the MCARE Act. First, appellant contends that the trial court misconstrued the MCARE Act's requirement that a testifying expert "[b]e engaged in or retired within the *previous five years* from active clinical practice or teaching," arguing that the five year period is measured from the time of the alleged negligence and *not from the time of trial.* 40 P.S. § 1303.512(b)(2) (emphasis added). Appellant's second contention is that the trial court erred in not qualifying Dr. Bisordi on the basis of his current teaching activities. Finally, appellant contends that section 512 of the MCARE Act is unconstitutional, as it usurps the rule-making authority of the judiciary and violates the equal protection and due process clauses of the Pennsylvania and U.S. Constitutions.

¶ 7 In reviewing the entry of a nonsuit, our standard of review is abuse of discretion or error of law. *Kovalev v. Sowell,* 839 A.2d 359, 368 (Pa.Super.2003), *appeal denied,* 860 A.2d 124 (2004) (citing *Alfonsi v. Huntington Hosp., Inc.,* 798 A.2d 216, 218 (Pa.Super.2002) (en banc)). Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court. *Turney Media Fuel, Inc. v. Toll Bros., Inc.,* 725 A.2d 836, 839 (Pa.Super.1999). We may reverse only if we find an abuse of discretion or error of law. *Id.*

¶ 8 The issues presented in this case are in essence questions of statutory interpretation. Since interpretation of a statute is a question of law, our review is plenary. *Commonwealth v. Gilmour Mfg. Co.,* 573 Pa. 143, 148, 822 A.2d 676, 679 (2003). However, we are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501–1991. The goal in interpreting any statute is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. *Gilmour, supra* at 148, 822 A.2d at 679. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from arguments based on legislative history or "spirit" of the statute. *See* 1 Pa.C.S.A. § 1921(b); *Pennsylvania School Boards Ass'n v. Commonwealth Public School Employees' Ret. Bd.,* —— Pa. ——, ——, 863 A.2d 432, 435 (2004); *Kmonk–Sullivan v. State Farm Mutual Auto. Ins. Co.,* 567

Pa. 514, 521, 788 A.2d 955, 959 (2001); *Hayes v. Mercy Health Corp.*, 559 Pa. 21, 26, 739 A.2d 114, 116 (1999). We must construe words and phrases in the statute "according to rules of grammar and according to their common and approved usage . . . ." 1 Pa.C.S.A. § 1903(a). We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage. 1 Pa. C.S.A. § 1921(a); *Gilmour, supra* at 149, 822 A.2d at 679.

¶ 9 The statute that we are called upon to interpret establishes criteria for the qualification of an expert witness in a medical professional liability action against a physician. The relevant provisions are the following:

(b) Medical testimony.—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

\* \* \*

(c) Standard of Care.—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care must also meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

40 P.S. § 1303.512(b) & (c).

¶ 10 Appellant contends that the statutory time-frame for retirement "within the previous five years" in section 512(b) refers to the five years prior to the date of the alleged malpractice. In other words, appellant argues that the malpractice alleged in this case occurred within the relevant statutory time period, since Dr. Bisordi retired from active practice in 1995 and the claimed malpractice occurred from 1990 to 1998. We disagree.

¶ 11 We look first, as we must, at the plain meaning of the words in section 512(b). The statute is written entirely in the present tense to set the qualifications for an expert who is testifying. The first qualification is that the testifying expert must *possess* a physician's license to practice medicine. The unambiguous meaning of the language is that the expert must possess the license at the time that he testifies. There is *no* statutory contemplation (e.g. through inclusion of language in the past tense or modifying phrases) of the possibility that the relevant time for possession of the license could be at some point in the past. The second qualification is that the testifying expert "[b]e engaged in or retired within the previous five years from active clinical practice or teaching." Again, the statutory verb is present tense, referring to the time of giving testimony. To apply a different temporal reference point to the segment of the statute that deals with a retired expert would violate the plain meaning of the statute. Based on

the plain language, we can see no logical or grammatical way to infer that the relevant time period from which retirement is measured is different from the relevant time period for the other parts of Section 512(b), *i.e.*, the time at which testimony is given.

¶ 12 Although we believe that the plain language of section 512(b) is clear and unambiguous, and therefore dispositive, we also note that arguments based on a comparison of sections 512(b) and (c) support our interpretation. Section 512(c) deals only with expert testimony concerning a physician's standard of care, and gives qualifications, in addition to those of section 512(b), that an expert must possess in order to testify as to this issue. Specifically, the statute mandates that an expert who is testifying as to the standard of care must "[b]e substantially familiar with the applicable standard of care for the specific care at issue *as of the time of the alleged breach* of the standard of care." 40 P.S. § 1303.512(c)(1) (emphasis added). Thus, the legislature addressed the need for the expert to be familiar with the standard of care at the relevant time in the past in this section of the statute.

¶ 13 We must not overlook the fact that the phrase "as of the time of the alleged breach of the standard of care" is included in section 512(c)(1) and absent from section 512(b). "[W]here the legislature includes specific language in one section of the statute and · excludes it from another, the language should not be implied where excluded." *Fonner v. Shandon, Inc.*, 555 Pa. 370, 378, 724 A.2d 903, 907 (1999). Indeed, by well-established rules of statutory interpretation, the significance is even greater than a mere cau-

tion not to imply inclusion. When comparing two similar statutory sections, where one contains a particular provision but the other does not, the difference is significant to show a different legislative intent. *Id.* at 378–79, 724 A.2d at 907 (citing *Commonwealth v. Bigelow*, 484 Pa. 476, 484, 399 A.2d 392, 395 (1979)). Sections 512(b) and (c)(1) are similar in that they both specify qualifications for an expert testifying in a professional liability action. However, only section 512(c)(1) specifies that the relevant time of consideration is when the alleged breach of the standard of care took place.[3] We must conclude that since the legislature did not include this temporal directive in section 512(b), its intent was distinct in the two sections. We point out that the expert must qualify under Section 512(b) before the additional requirement of Section 512(c)(1) is triggered.

¶ 14 Finally, we note that medical logic as well as legal logic supports the distinction between sections 512(b) and (c). Section 512(c) applies only to experts who are testifying as to the standard of care. However, section 512(b) applies to experts testifying on a variety of medical matters, including not only standard of care, but also "risks and alternatives, causation and the nature and extent of the injury ...." 40 P.S. § 1303.512(b). Our case law and section 512(c) recognize that it would be totally unreasonable and grossly unfair to require that a physician who is the subject of the malpractice suit meet a standard of care that evolved after the date of the alleged breach. *See, e.g., Maurer v. Trs. of Univ. of Pennsylvania*, 418 Pa.Super. 510, 614 A.2d 754, 762–63 (1992) (en banc). However, when the issue is one of risk, causation, or nature of the injury, it is

---

**3.** Well-established case law also makes clear that the relevant standard of care in a medical malpractice action must be determined as of the time of the alleged breach. *See, e.g.,* *Maurer v. Trs. of Univ. of Pennsylvania,* 418 Pa.Super. 510, 614 A.2d 754, 762–63 (1992) (en banc).

likely that the most current medical understanding would be relevant and helpful to the finder of fact. These considerations all appear to be reflected in the statutory framework and language.

¶ 15 We thus hold that the phrase "within the previous five years" in 40 P.S. § 1303.512(b)(2) refers to a time period that is measured from the time that the expert testifies.[4] It is not measured from the time of the alleged negligence. On this point the trial judge was correct. Appellant's argument fails.

¶ 16 Appellant alternatively contends that the trial court erred in not qualifying Dr. Bisordi as an expert on the basis of his teaching activities. Two statutory provisions are relevant to the issue presented in this case. First, for an expert to qualify to testify on a medical matter in a professional liability action, he must "[b]e engaged in or retired within the previous five years from active clinical practice or teaching." 40 P.S. § 1303.512(b)(2). Second, in addition to the above requirement, an expert testifying as to a physician's standard of care must "[p]ractice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue ...."[5] 40 P.S. § 1303.512(c)(2).

¶ 17 In the present case, the trial court ruled that Dr. Bisordi was not qualified to testify as an expert because although he "was actively teaching, he was not teaching in the specialized field of endoscopy which is the specialty he was being offered to testify in." Trial Court Opinion, 6/11/04, at 9. See also id. at 11. The relevant subspecialty in this case, and the one in which Dr. Bisordi was offered as an expert, was gastroenterology. The unrefuted evidence showed that both Dr. Bisordi and Dr. Fisher are gastroenterologists. Thus Dr. Bisordi satisfied the requirement of section 512(c)(2) that the subspecialty of the expert witness be the same as that of the defendant physician.[6]

¶ 18 The trial court erred in focusing its inquiry into Dr. Bisordi's teaching activities "in the specialized field of endoscopy." Trial Court Opinion, 6/11/04, at 9. Endos-

4. Although we believe that the plain language of the statute mandates such a result, we also note that we find merit in some of the policy arguments in favor of a contrary result, as described in Spotts v. Small, 61 Pa. D. & C. 4th 225 (Lancaster Cty.2003) and in appellant's brief. We are concerned about the disruption and expense that a party may incur if its expert is qualified according to section 512(b) at the time of deposition or preparation of a report, but then, because of trial delays, falls outside the five year period by the time that he is to give testimony at trial. We are also concerned about the possibility of abuse by delay tactics, the primary goal of which is to prevent the trial from occurring until the opponent's expert has been retired for more than five years and thus is unqualified to testify. Regardless of such concerns, our duty is to discern and effectuate the legislature's intent.

5. We note that the language of section 512(c)(2) does not include teaching, but mentions only "practice." This issue is not addressed by either party. However, we agree with the Pennsylvania Medical Society that the term "practice" in section 512(c)(2) necessarily encompasses teaching as well as clinical care. See Brief of the Pennsylvania Medical Society as amicus curiae in support of appellee Fisher at 19. The "practice" of medicine must include teaching students, residents, and fellows at an accredited institution to practice medicine. Otherwise, teachers who do not also have an active clinical practice would not be qualified to testify regarding standard of care—a result that would contradict section 512(b)(2).

6. Alternatively, the expert witness can be in a subspecialty that "has a substantially similar standard of care for the specific care at issue ...." 40 P.S. § 1303.512(c)(2). But this part of the statute is not under consideration here since Drs. Bisordi and Fisher were in the same subspecialty—gastroenterology.

copy is not a subspecialty; it is a diagnostic technique in which a cavity of the body is subjected to visual inspection by means of an endoscope.[7] Dorland's Illustrated Medical Dictionary, 26th edition, 1985, W.B. Saunders Co. By contrast, a subspecialty in the context of medical practice is defined as "a branch of medicine subordinate to a specialty, as gastroenterology is a subspecialty of internal medicine."[8] *Id.* The comparison of proposed expert and defendant physician in section 512(c)(2) is based on *subspecialty* of medicine, by the explicit language of the statute. The statute does not contemplate disqualifying an expert based on his failure to teach a specific diagnostic technique such as endoscopy.

¶ 19 The record is clear that Dr. Bisordi was offered as an expert in the subspecialty of gastroenterology. N.T. 3/3/03 at 41a. His testimony was to address the standard of care that would have applied when a gastroenterologist was presented with a patient such as Dr. Weiner, who exhibited certain symptoms and had a family history of gastrointestinal cancer. The trial court's limited focus on endoscopy, rather than on the subspecialty of gastroenterology, constituted a misinterpretation of the plain meaning of the statute and hence was an error of law.

■ ¶ 20 Because the trial court erroneously interpreted the statute when it held that Dr. Bisordi was not qualified as an expert witness because he did not teach endoscopy, we must remand for a reconsideration of his qualifications as a teacher of gastroenterology. In remanding, we are aware that there is no definition of teaching in the statute. The parties agree that not all teaching would satisfy the statutory requirements;[9] however, there is little guidance in statutory or case law to assist the trial court in determining what level and involvement in teaching *does* satisfy the statute.

■ ¶ 21 After applying the normal rules of statutory construction, we conclude that section 512(b)(2) does not require that the expert's teaching responsibilities be full-time. In section 512(e), which allows the court to waive the same specialty and board certification requirements for an expert under certain circumstances, the statute expressly requires "full-time teaching."[10] However, the adjective "full-time" is missing from the provision of relevance to the present issue, section 512(b)(2). We cannot imply the inclusion of the adjective "full-time" in sec-

---

7.  An endoscope is "an instrument for the examination of the interior of a hollow viscus ...." Dorland's Illustrated Medical Dictionary, 26th edition, 1985, W.B. Saunders Co.

8.  Internal medicine is a specialty, of which gastroenterology is a subspecialty. To be certified in gastroenterology, a physician must first be certified in internal medicine. Endoscopy is one of a variety of procedures in which a gastroenterologist must be competent in order to be certified. *See* the website of the American Board of Internal Medicine, *www.abim.org/ABOUT/Pp.htm* and www.abim.org/subspec/subspage.htm.

9.  For example, the parties agree, as do we, that teaching high school or non-medical college courses would not satisfy the statutory directive.

10.  Section 512(e) of the MCARE Act reads:

    (e) Otherwise adequate training, experience and knowledge.—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

tion 512(b)(2), and thus we must conclude that teaching responsibilities in this section need not be full-time. *See Fonner, supra* at 378–79, 724 A.2d at 907.

¶ 22 At the other end of the extreme, we agree with amici[11] that a *de minimis* level of teaching is not sufficient to satisfy the statute. The level of teaching must be sufficient to establish the general requirement of the statute that the witness possesses "sufficient education, training, knowledge and experience to provide credible, competent testimony . . . ." 40 P.S. § 1303.512(a).

¶ 23 The record is unclear or vague as to whether Dr. Bisordi actively teaches in the area of gastroenterology, or where he teaches. Dr. Bisordi is not affiliated with any medical school, although he is affiliated with two hospitals as an attending physician. The record is also not clear as to several other factors: whether his students are interns, residents, fellows, or others; the subject matter he teaches; the amount of time per week he teaches; the academic level of his students; the settings where he teaches; and the compensation he receives for teaching.

¶ 24 Absent record evidence of the above, we can not determine if Dr. Bisordi qualifies as an expert witness. On remand the inquiry must focus on whether Dr. Bisordi teaches gastroenterology. Dr. Bisordi testified that his teaching responsibilities "encompass areas of gastroenterology" and that he teaches "areas of quality of care" related to gastroenterology. Such vague descriptions are not sufficient to qualify Dr. Bisordi as a physician who is actively teaching. The statute provides that the expert must be in *active* clinical practice or teaching. The word active modifies both clinical practice and teach-

ing. The burden to establish Dr. Bisordi's qualifications lies with appellant, who is proposing him as an expert witness. *Kovalev, supra* at 363–65. To satisfy this burden, appellant must provide more than vague pronouncements of teaching activity. One purpose of the MCARE Act is to ensure that an expert witness "possesses sufficient education, training, knowledge and experience to provide credible, competent testimony . . . ." 40 Pa.C.S.A. § 1303.512(a).

¶ 25 Appellant's third claim is that section 512 of the MCARE Act is unconstitutional. Given our resolution of this case, we need not address the constitutional issue.

¶ 26 Order vacated and remanded for further proceedings. Jurisdiction relinquished.

¶ 27 TODD, J. files a Concurring Statement which is joined by HUDOCK and BECK, JJ.

¶ 28 HUDOCK, J. also joined the Opinion by BECK, J.

CONCURRING OPINION BY TODD, J.:

¶ 1 I join in the opinion of my esteemed colleague Judge Beck on behalf of the Majority. I write separately only to emphasize the troublesome application of the 5–year rule for expert testimony under 40 P.S. § 1303.512(b) to cases such as the present one. As the Majority notes (*see* Majority Op., at 1288 n. 4), delays in the pretrial phases of litigation, whether intentional or inadvertent, may have the result of rendering inadmissible expert testimony which, during pretrial proceedings, was admissible. The unfairness and substantial

---

**11.** Brief of the Pennsylvania Medical Society as amicus curiae in support of appellee Fisher at 18.

inefficiency of this result for a litigant who may have no control over a pretrial delay is of such a serious nature that I believe it warrants the renewed attention of the legislature.

¶ 2 HUDOCK and BECK, JJ. join.