# Fanelli v. Independence Blue Cross

*Gilbert Abramson,* for plaintiff.
*Gerald Dugan,* for defendant.

SHEPPARD JR., *J.,* October 11, 2005—This opinion is submitted relative to Independence Blue Cross' (IBC) and Keystone Health Plan East's (collectively defendants), appeal of this court's May 12, 2005 order, which required defendants to produce members of IBC's Credentialing Committee for depositions.

This court submits that the order appealed from is interlocutory and that this appeal should be quashed.

However, should the appeal be deemed proper, this court respectfully submits that, for the reasons discussed, its order should be affirmed.

## BACKGROUND

In December 2004, plaintiffs Andrew T. Fanelli D.O. and Regional Gastrointestinal Consultants P.C. (plaintiffs), filed suit seeking a determination that Dr. Fanelli should be admitted as a credentialed member of IBC's participating physician network. This action centers primarily on whether the deliberations and decision of defendants' Credentialing Committee complied with applicable law.

Previously, on January 15, 2004, the Credentialing Committee conducted a hearing to decide whether Dr. Fanelli should be permitted to continue as a member of the Keystone network. The hearing was held before six non-employee, credentialed providers within the IBC

network who are actively engaged in patient care. Dr. Fanelli submitted written materials and appeared at the hearing to address the committee, as well as to answer their inquiries. The committee determined unanimously that Dr. Fanelli should not be reinstated to the Keystone network.

In September 2004, Dr. Fanelli submitted a new application. This application was rejected by the committee. Dr. Fanelli's appeal of the committee's decision was subsequently denied. The committee members that decided Dr. Fanelli's new application, as well as his appeal, were the same physicians that had originally denied Dr. Fanelli's reinstatement to the Keystone network in January 2004.

Plaintiffs noticed the depositions of the members of the Credentialing Committee that terminated Dr. Fanelli's participation in the Keystone network. In response, defendants filed a motion for a protective order to preclude the depositions. This court denied defendants' motion, and permitted the depositions. Defendants filed a motion for reconsideration which was denied. This appeal ensued.

## DISCUSSION

### I. *The Order Appealed Is Interlocutory and the Appeal Should Be Quashed*

As a general rule, an appeal will lie only from a final order, unless otherwise permitted by statute. *Pugar v. Greco,* 483 Pa. 68, 72, 394 A.2d 542, 544 (1978). An order is final for purposes of appeal "only if because of either its 'technical effect' or its 'practical ramifications'

the litigant appealing the order is 'out of court.' " *Matthews v. Johns-Manville Corp.,* 307 Pa. Super. 300, 303, 453 A.2d 362, 363 (1982). See also, Pa.R.A.P. 341(b)(1). Put another way, an appealable order "is one which ends the litigation, or alternatively, disposes of the entire case." *Gottschall v. Jones & Laughlin Steel Corporation,* 333 Pa. Super. 493, 498, 482 A.2d 979, 982 (1984).

Since the May 12, 2005 order does not put defendants out of court, does not end the litigation, or does not dispose of the entire case, it is not final. However, this court recognizes that, pursuant to Pa.R.A.P. 313(a), an appeal may be taken as of right from a collateral order.

A non-final order may be appealed as of right "if it is separable from and collateral to the main action, involves a right too important to be denied review and, if review is postponed, the right will be irreparably lost." *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1220 (Pa. Super. 2003); Pa.R.A.P. 313. The Pennsylvania Supreme Court has held that the collateral order doctrine conveys the right to appeal simply by filing a notice of appeal, provided that the party has satisfied this three-pronged prerequisite. *Commonwealth v. Dennis,* 580 Pa. 95, 106, 859 A.2d 1270, 1277 (2004). The Supreme Court, announcing its commitment to "preventing the erosion of the principle behind the collateral order doctrine . . . to prevent undue corrosion of the final order rule," held: "[t]o that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral." *Melvin v. Doe,* 575 Pa. 264, 272, 836 A.2d 42, 46-47 (2003).

"An order is *not* separable and collateral from an action where it has the potential to decide at least one issue in a case." *Pace v. Thomas Jefferson University Hospital,* 717 A.2d 539, 541 (Pa. Super. 1998) (emphasis added), citing *Van der Laan v. Nazareth Hospital,* 703 A.2d 540 (Pa. Super. 1997). This court submits that this appeal does not satisfy this first prong of the collateral order doctrine.

The complaint alleges that the committee's denial of Dr. Fanelli's reinstatement to the Keystone network was "unlawful, arbitrary and capricious" because the reasons stated for denial of credentials "were not provided for in the bylaws or credentialing policies of IBC." Compl. at ¶29. Likewise, plaintiffs assert that the decision was made "with an improper mixing of prosecutorial and adjudicatory function[s] by Dr. Snyder" while participating in the deliberative process. *Id.* at ¶30. Plaintiffs allege that IBC's denying Dr. Fanelli's credentials was an action "taken in bad faith and was retaliatory in nature, due in part, to Dr. Fanelli's having repeatedly challenged IBC's arbitrary and capricious behavior toward him." *Id.* at 32. Plaintiffs further allege that IBC cannot carry out its credentialing function "in a fair, impartial or unbiased manner nor can it follow the laws and statutes of the Commonwealth, nor does it have concerns for the rights of its patient/insureds." *Id.* at 50.

Thus, the process by which the committee made its determinations, an issue which will be explored at the depositions of the committee members, has the potential to resolve issues in this litigation. Accordingly, this court believes that the issue raised by defendants in the instant

appeal is inseparable from this case and therefore, defendants' appeal should be quashed.[1]

## II. *Alternatively, If the Order Appealed Is Deemed Proper, It Should Be Affirmed*

### A. Plaintiffs' Reliance on 40 Pa.C.S. §6324 Has No Bearing on Whether the Committee Members Should Be Deposed

Defendants argue that, since plaintiffs' claims rest upon the application of the requirements of 40 Pa.C.S. §6324 (a statute which provides in part that IBC cannot deny participation in the Keystone network without the approval of the Department of Health),[2] the depositions of the Credentialing Committee members would not be relevant because these physicians cannot testify to the corporate structure of the defendants.[3] Thus, defendants assert that the committee members should not be deposed.

While it may be true that the committee members are not informed as to IBC's corporate structure, plaintiffs assert that they are entitled to question these witnesses "about the grounds for their decisions; the nature of their deliberations; what evidence was considered; what instructions they might have been given and by whom; what criteria they themselves might have established; what information, if any, they received from outside the hearing itself; what their relationships were with Dr.

---

1. Because defendants must satisfy all three prongs of the collateral order rule, the remaining two prongs need not be addressed.

2. Plaintiffs contend that this approval was not sought.

3. Defendants argue that 40 Pa.C.S. §6324 does not apply because IBC is a hospital plan corporation and not a professional health services corporation.

Fanelli and with Dr. Fanelli's competitors; what they knew about Dr. Fanelli beforehand; and how IBC officials behaved before and during the hearings." Plaintiffs' answer to defendants' motion for protective order at pp. 7-8. This court agrees.

This line of questioning is relevant to the issue of whether the hearings were conducted fairly and in accord with the laws of this Commonwealth.

### B. The Confidentiality Provision of the Peer Review Act Does Not Extend to IBC's Credentialing Committee

Defendants assert that the Credentialing Committee's deliberations are protected by the Peer Review Act. The confidentiality provision of the Peer Review Act provides in part:

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence *in any civil action against a professional health care provider* . . . ." 63 P.S. §425.4. (emphasis added)

Thus, in order for the Peer Review Act to make confidential the proceedings of the Credentialing Committee, defendants must be "professional health care providers." Under the definitional provision of the statute, as well as the applicable case law, IBC is *not* a professional health care provider.

The Peer Review Act defines "professional health care provider" as follows:

"Individuals or organizations who are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth,

including, but not limited to, the following individuals or organizations:

"(i) a physician;

"(ii) a dentist;

"(iii) a podiatrist;

"(iv) a chiropractor;

"(v) an optometrist;

"(vi) a psychologist;

"(vii) a pharmacist;

"(viii) a registered or practical nurse;

"(ix) a physical therapist;

"(x) an administrator of a hospital, nursing or convalescent home or other health care facility; or

"(xi) a corporation or other organization operating a hospital, nursing or convalescent home or other health care facility."

The Act's list of examples demonstrates that it applies to those who provide health care directly, or administer or operate a health care facility. IBC's own website characterizes IBC and its subsidiaries as "health insurers," not providers of health care. See defendants' response to plaintiffs' motion for protective order, exhibit "A."

Case law confirms that the confidentiality provision of the Act is inapplicable to IBC. In *McClellan v. Health Maintenance Organization,* 442 Pa. Super. 504, 660 A.2d 97 (1995), the Superior Court was charged with ascertaining whether HMO PA, an Independence Practice Association (IPA),[4] is a "professional health care pro-

---

4. An IPA model of an HMO is an HMO "that contracts for delivery of services with a partnership, corporation or association whose

vider" as defined by the Peer Review Act. The Superior Court held that the confidentiality provision of the Peer Review Act does not apply to such an entity because the defendant did not "designate itself or hold itself out to be a 'provider' of professional health care services," and because such entities "*do not operate their own [health care] facilities, but merely act as insurers or quasi-insurers . . . .*" McClellan, at 513, 660 A.2d at 101. (emphasis added)

The Supreme Court affirmed *McClellan* by an equally divided court. Justice Newman, writing in support of affirmance, stated:

"Clearly, the list of health care providers set forth in section 425.2 includes only (1) immediate or direct health care practitioners, and (2) administrators of medical facilities, be they individuals or organizations. HMO PA is apparently not a direct health care provider. It may enjoy the protection of the Act, then, only if it may be regarded as an administrator of a medical facility." 546 Pa. 463, 473, 686 A.2d 801, 806 (1996).

While the court recognizes that the product of an equally divided court does not establish precedent,[5] this court agrees with the analysis of Justice Newman. Accordingly, this court found that the Peer Review Act does not apply to IBC and its order should be affirmed.

---

major objective is to enter into contractual agreements with health professionals for the delivery of such health services." 28 Pa. Code §9.2.

5. *Van Cure v. Hartford Fire Insurance Company,* 435 Pa. 163, 169, 253 A.2d 663, 666 (1969).

## C. The Peer Review Act Does Not Apply When a Physician Challenges the Process of the Review

In *Hayes v. Mercy Health Corporation,* 559 Pa. 21, 739 A.2d 114 (1999), the Pennsylvania Supreme Court was confronted squarely with the issue presented here, that is, whether the Peer Review Act is applicable where a physician challenges the process of his review.

In *Hayes,* the plaintiff physician challenged the recommendation of the defendant hospital's medical board regarding the suspension of his clinical privileges. During the course of the litigation, Dr. Hayes requested a copy of the tape recording of the medical board's meeting during which the board deliberated and decided upon its recommendation. Defendants contended that the Peer Review Act barred Dr. Hayes' request.

In interpreting the Act, the court stressed the "words of limitation,"[6] and pointed out that section 4 barred from discovery committee proceedings in only "civil action[s] . . . arising out of the matters which are the subject of evaluation and review by such committee." The court explained that Dr. Hayes' lawsuit did not fit within the scope of the limitation because Dr. Hayes was challenging the proceeding and not the issues that were the subject of the evaluation by the board. *Hayes,* 559 Pa. at 26-27, 739 A.2d at 117.

Finally, the court in *Hayes* concluded that the intent of the legislature "was to prevent the disclosure of peer review information to *outside parties* seeking to hold professional health care providers liable for negligence, while at the same time ensuring that *such guarantee of*

---

6. *Hayes,* 559 Pa. at 26, 739 A.2d at 117.

*confidentiality did not operate to shield from discovery those rare instances in which the peer review process was misused." Id.* at 29, 739 A.2d at 118. (emphasis added)

This court submits that the *Hayes* decision is instructive, here. Accordingly, the confidentiality provision of the Peer Review Act does not shield the committee members from depositions.

### D. Defendants Have Failed To Sustain Their Burden of Proving That the Protective Order Is a Necessity

Defendants seek a protective order pursuant to Pennsylvania Rule of Civil Procedure 4012. This rule provides:

"(a) Upon motion by a party or by the person from whom discovery or deposition is sought, *and for good cause shown,* the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense . . . ." (emphasis added)

"The granting of relief in a discovery proceeding is dependent upon a prima facie showing of necessity, since the relief is not to be granted as a matter of right." *In re Estate of Roart,* 390 Pa. Super. 38, 47, 568 A.2d 182, 187 (1989). "The party moving for a protective order based on Pa.R.C.P. 4012 bears the burden of establishing the objectionable nature of the discovery he [or she] is withholding." *Griffiths v. Ulmer,* 55 D.& C.4th 370, 373 (Lacka. Cty. 2002); *Platinum Corp. v. Blong,* 43 D.&C.4th 445, 446-47 (Fayette Cty. 1998), citing *Cippollone v. Liggett Group Inc.,* 106 F.R.D. 573, 585

(1985).[7] In order to establish the "good cause" required, the party moving for the protective order must produce, "at a minimum, some evidence upon which a court can make a determination that harm will result from disclosure." *Ornsteen v. Bass,* 50 D.&C.3d 371, 374 (Phila. Cty. 1988). "The determination of whether good cause does or does not exist *must be based upon appropriate testimony and other factual data, not the unsupported contentions and conclusions of counsel." Id.,* citing *Davis v. Romney,* 55 F.R.D. 337, 340 (1972). (emphasis added)

In support of their position that the protective order is appropriate, defendants' assert:

"It is very difficult for hospitals and health plans to get practicing physicians who are willing to give up their personal time to participate on committees. If they are faced with the threat of deposition every time a decision is made that a practitioner does not like, then the potential chilling effect on physician participation is very real." Memorandum in support of the defendants' motion for a protective order, p. 8.

The unsupported contentions of counsel, that a "chilling effect" will result if this court does not grant defendants' motion for a protective order, are not sufficient to support defendants' burden of proof. Furthermore, litigants should expect that "[a]lmost any discovery request causes some annoyance, embarrassment, oppression,

---

7. The federal cases cited above are persuasive. This court agrees with *Dominick v. Hanson,* 753 A.2d 824, 827 (Pa. Super. 2000), that "this [federal] case law [is] persuasive considering the similarities between the federal and state discovery rules."

burden or expense . . . ." *D.S. v. DePaul Institute,* 32 D.&C.4th 328, 334 (Allegheny Cty. 1996).[8]

This court believes that defendants have not sustained their burden of proof with regard to the possible deleterious effects of the denial of their protective order.

## CONCLUSION

For the reasons discussed, this court respectfully submits that this appeal should be quashed. In the alternative, this court submits that its order of May 12, 2005 should be affirmed.

---

8. This court suggests that the medical profession should be expected to police its profession. Indeed, they announce this in a number of contexts. At times, this may require doctors to step to the plate. One could conclude that it would be desirable for the entire profession to know what rationale will preclude doctors from participating in health care networks.