COMMONWEALTH of Pennsylvania,
Appellant,

v.

Antonia BARFIELD, Appellee.

Superior Court of Pennsylvania.

Submitted Aug. 28, 2000.

Filed Feb. 1, 2001.

Donald R. Totaro, Asst. Dist. Atty., Lancaster, for Commonwealth, appellant.

Patricia K. Spotts, Lancaster, for appellee.

* Retired Justice assigned to Superior Court.

Before DEL SOLE, ORIE MELVIN and MONTEMURO *, JJ.

ORIE MELVIN, J.:

¶ 1 The Commonwealth appeals from the trial court's Order granting Appellee's, Antonia Barfield's, motion for judgment of acquittal on two counts of kidnapping. For the following reasons we affirm.

¶ 2 The facts are not in dispute and have been summarized by the trial court as follows.

On May 2, 1996, the court entered an order placing [Appellee's] children, [K.Y.] and [F.B.], in the custody of the Lancaster County Children and Youth Agency (agency).

On June 13, 1996, following a hearing, the court adjudicated the children dependent and continued them in the custody of the agency. The children were placed in foster care and a placement plan amendment was prepared for [Appellee] setting forth what she was required to accomplish in order for the children to be returned to her care.

Periodic review hearings were held at which the children were continued in foster care.

At the review hearing held on June 1, 1999, [Appellee] requested that her children be returned to her. The court denied the request, but ordered that another review hearing be held in two months. The court also ordered that [Appellee] was to have unsupervised weekend visits with the children.

[Appellee] was scheduled to have a visit with the children from June 11, 1999, until June 13, 1999. [Appellee] obtained physical custody of the children on June 11, 1999. However, she failed to return the children to their foster mother as required on June 13, 1999.

When the children were not returned to her custody, the foster mother notified the agency caseworker. On June

14, 1999, [Appellee] left a message for the agency caseworker stating that the children were fine and that they had been taken into the custody of Provident Embassy World Religions and that the agency would receive an order overruling its custody order. Once this occurred, [Appellee] indicated that she would return to Lancaster. [Appellee] left similar messages for the caseworker stating that [Appellee] had taken the children on her own, that the agency no longer had jurisdiction, and that eventually [Appellee] planned on coming back to Lancaster.

The caseworker contacted the Lancaster City Police and a warrant was subsequently issued for [Appellee's] arrest. She was taken into custody in Philadelphia, Pennsylvania, on September 17, 1999, and returned to Lancaster.

The whereabouts of the children remain unknown.

Trial Court Opinion, 5/4/2000, at 3–4.

¶ 3 The District Attorney of Lancaster County filed an information charging Appellee with two counts of kidnapping [1] and two counts of interference with custody of children.[2] At the conclusion of the Commonwealth's case, Appellee's counsel demurred to the Commonwealth's evidence with respect to the kidnapping counts. "The court treated [the] demurrer as a motion for judgment of acquittal and denied it after hearing argument." *Id.* at 2. "[Appellee] rested without presenting any evidence and renewed her motion for judgment of acquittal." *Id.* The court withheld its ruling and allowed the case to go to the jury. The jury returned a verdict of guilty on all counts. Following discharge of the jury, the court granted Appellee's motion for judgment of acquittal with respect to the charges of kidnapping on the basis that § 2901(a)(4) was not intended to address the conduct in which Appellee engaged. Thereafter, Appellee was sentenced on the convictions for two counts of interference

with the custody of children. On the first count, she received a term of imprisonment of three and one-half (3½) to seven (7) years with a recommendation that parole be denied until such time as the children are returned to the custody of CYS. On count 2, Appellee was sentenced to seven (7) years probation concurrent with count 1 and conditioned upon her providing full disclosure on a continual basis of all information relative to the identification and whereabouts of the religious group that is holding the children. This Commonwealth appeal timely followed the trial court's Order of March 17, 2000, which granted Appellee's motion for judgment of acquittal on the two kidnapping counts.

¶ 4 The sole question presented is whether the trial court erred as a matter of law in determining that § 2901(a)(4) of the kidnapping statute was not intended to address a situation where a non-custodial parent removes her children from the custody of a social service agency in violation of a court ordered placement plan?

¶ 5 "When ruling upon a post-verdict motion for judgment of acquittal, 'a trial court is limited to determining the presence or absence of that quantum of evidence necessary to establish the elements of the crime.'" *Commonwealth v. Chiari,* 741 A.2d 770, 773 (Pa.Super.1999) (quoting *Commonwealth v. Feathers,* 442 Pa.Super. 490, 660 A.2d 90, 94–95 (1995) (*en banc*), *aff'd,* 546 Pa. 139, 683 A.2d 289 (1996)).

To determine the legal sufficiency of evidence supporting a jury's verdict of guilty, the [Superior Court] must:

view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been

---

1.  18 Pa.C.S.A. § 2901(a)(4).

2.  18 Pa.C.S.A. § 2904(a).

established beyond a reasonable doubt.

*Id.*

¶ 6 Section 2901(a)(4) of the Pennsylvania Crimes Code provides as follows:

### § 2901. Kidnapping

(a) **Offense defined.**—A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

     \*    \*    \*    \*    \*    \*

(4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S.A. § 2901(a)(4). Accordingly, in order for Appellee to be convicted of kidnapping under this subsection, it is necessary for the Commonwealth to prove she unlawfully removed her children with the intent to interfere with the performance by public officials of any governmental or political function.

¶ 7 This case presents us with our first opportunity to evaluate the proscribed purpose embodied by subsection (4) of the kidnapping statute. In interpreting a statute, the court's overriding concern is to ascertain and effectuate legislature's intent in enacting the statute. *Hayes v. Mercy Health Corp.,* 559 Pa. 21, 25–26, 739 A.2d 114, 116 (1999); 1 Pa.C.S.A. § 1921(a). In this regard, the statute's language and the statutory scheme in which it is found control. *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384 (2000); 1 Pa.C.S.A. § 1921(b). Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary. *Commonwealth v. Thomas,* 743 A.2d 460 (Pa.Super.1999); 1 Pa.C.S.A. § 1903(a). Moreover, the Statutory Construction Act states:

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921. Furthermore, "[a] statute should be interpreted as a whole, giving effect to all its provisions." *Commonwealth v. Campbell,* 758 A.2d 1231, 1234 (Pa.Super.2000) (citations omitted).

¶ 8 The trial court found the Commonwealth's proof lacking with respect to the purpose element. The trial court reasoned that subsection (4) contemplated actions constituting political terrorism and not actions by a parent that interfere with custody, as those actions are specifically proscribed by a related section of the subchapter dealing with kidnapping, namely § 2904 (Interference with custody of children). The Commonwealth argues an agency caseworker is a public official performing a governmental function because they act pursuant to a court ordered placement plan in accordance with state mandated duties under the Juvenile Act and the Child Protective Services Law. Alternatively, the Commonwealth submits judges are public officials performing governmental functions whose duties with respect to the placement of children are interfered with when those children are removed from the court's jurisdictional reach. We find no logical force in either argument as they merely serve to beg the

question of whether this type of conduct was intended to be proscribed by the kidnapping statute.

¶ 9 Whenever a custody order is in place and the non-custodial parent acts in contravention of that order the respective duties of the assigned caseworker and judge are certainly affected. Undoubtedly, such activity is frowned upon; however, the legislature has seen fit to classify such conduct as a separate and distinct crime. *See* 18 Pa.C.S.A. § 2904. If we were to accept the Commonwealth's position then the crime of interference with the custody of children would become superfluous. Clearly, the object to be attained by the legislature was just the opposite. Notwithstanding its similarity in some respects to kidnapping, the interest to be protected by § 2904 is distinct from that of § 2901. *See* A.L.I., Model Penal Code and Commentaries, Part II § 212.4, comment 2 (1980). While § 2901 does not explicitly exempt parents from criminal prosecutions for abducting their own children we are not persuaded the legislature intended a parent to be prosecuted under subsection (4) and subject to its more severe penalty for the same conduct proscribed by § 2904(a)[3]. Of course, we are not suggesting there can never be a case where the circumstances coalesce to support a finding of the intent envisioned by subsection (4) where a parent abducts their child, only that this is not such a case.

¶ 10 The legislative history further supports the result reached by the trial court. In 1962 the American Law Institute released its comprehensive final draft of the Model Penal Code. The Model Penal Code became the standard for drafting modern criminal laws and, as such, it has been carefully followed by many principled states. *See generally*, Wharton's Criminal Law, Torcia, C., at Chapter 17 (14th ed.). Pennsylvania is one such state that has structured much of its Crimes Code in accordance with the Model Penal Code. Section 2901 is substantially similar to the Model Penal Code's proposed version of the offense of kidnapping.[4] Prior to the enactment of § 2901 Pennsylvania statutes only applied to abductions in which the abductor intended "to extort money or other valuable thing" or in the case of a child ten years old or under, with the intent to conceal or detain such child or steal anything from him.[5] As the consultant and reporter in the drafting of the Pennsylvania Crimes Codes noted "[n]o provision existed against kidnapping for rape, to facilitate commission of a felony, to prevent testimony, to terrorize, to coerce voting, or any other political or official action. This obvious and serious deficiency [was] corrected by the [enactment of § 2901] of the [Crimes] Code." Criminal Law Reform in Pennsylvania: The New Crimes Code, Sheldon S. Toll, 78 Dick.L.Rev. 1, 5 (1973).

¶ 11 Comment number 4 to the Model Penal Code's provision that corresponds with § 2901 notes:

As explained in Comment 1 above, many prior statutes combined comprehensive definition of the crime of kidnapping with authorization of very high penalties suited only for the most heinous cases covered. Two remedial courses are open to change this result. One is to restrict kidnapping to the case where ransom is demanded. The other is to cover a variety of purposes, but curtail the penalty for most kidnapping. The Model Code reflects the latter approach.... This general reduction in grading makes it a matter of less consequence that the proscribed purposes of kidnapping are rather broadly stated.

---

**3.** Kidnapping is a felony of the first degree. 18 Pa.C.S.A. § 2901(b). Depending upon the circumstances, interference with custody of children can be either a misdemeanor of the second degree, a felony of the third degree or a felony of the second degree. 18 Pa.C.S.A. § 2904(c).

**4.** See A.L.I., Model Penal Code and Commentaries, Part II § 212.1 (1980).

**5.** 18 P.S. §§ 4723 and 4725 respectively.

There is nevertheless a need to distinguish kidnapping as a felony of the second degree from the lesser crimes of felonious restraint and false imprisonment. The usual way of differentiating among offenses in this field is to specify nefarious purposes with which the actor must undertake removal or confinement of his victim. Section 212.1 sets out four such purposes. Paragraph (a) punishes unlawful removal or confinement with intent to hold for ransom or reward. A similar provision exists in the vast majority of American jurisdictions. Paragraph (a) also covers a purpose to use the victim as a shield or hostage. Kidnapping for this purpose involves obvious danger to the victim and should be included within the aggravated version of the offense. Paragraph (b) proscribes removal or confinement with intent 'to facilitate commission of any felony or flight thereafter.' The underlying perception is that kidnapping in order to commit or escape from a serious crime is especially likely to create risk to the victim. Certainly, this danger will arise if the predictable confrontation with the police occurs. This provision permits conviction, therefore, for kidnapping by a fleeing felon who commandeers a car and forces the owner to drive somewhere merely for the sake of the ride. Paragraph (c) punishes as kidnapping removal or confinement of another with intent 'to inflict bodily injury on or to terrorize' anyone. This language covers vengeful or sadistic abductions involving threat of torture, death, or other extremely frightening experience. Finally, **Paragraph (d) adds a provision against kidnapping 'to interfere with the performance of any governmental or political function.' This specification reaches political terrorism and the like, and classifies such conduct as among the most serious kinds of unlawful confinement.**

The list of purposes in Section 212.1 thus would **exclude from kidnapping cases where a parent out of affection takes his child away from another parent or lawful custodian,** detention for purpose of prosecution or treatment, and driving an unwilling acquaintance about the countryside to compel him or her to listen to proposals of business or love.... The objective is thus to exclude from the offense instances of conduct that seem literally included in some of the broadly worded statutes that were common at the time the Model Code was drafted.

ALI, Model Penal Code and Commentaries, Part II § 212.1, comment 4 (1980) (emphasis added). More specific examples of the types of activities proscribed by subsection (4) of the kidnapping statute are found in Tentative Draft No. 11 of the Model Penal Code, which states: "Clause (d) [corresponding to § 2901(a)(4)] raises to the aggravated felony level certain interference with political and governmental functions which might otherwise be misdemeanors or felonies of the third degree, e.g., abduction of witnesses, candidates, party leaders, officials [and] voters." ALI, Model Penal Code § 212.1, comment 2 to Tentative Draft No. 11 at 18 (1960).

¶ 12 Moreover, in promulgating § 2904 Pennsylvania followed the lead of the Model Penal Code[6] and removed from the general crimes of kidnapping the special case of custodial interference. The rationale that is offered to support this special treatment is twofold. First, "the interest protected is not freedom from physical danger or terrorization by abduction, [since that is adequately covered by § 2901], ... but rather the maintenance of parental custody against all unlawful interruption...." ALI, Model Penal Code and Commentaries, Part II § 212.4, comment 2(a). The conduct is further distinguishable from kidnapping by the fact the defendant is usually a parent or other relative who is favorably disposed toward the

---

6. ALI, Model Penal Code § 212.4.

child and does not think of his action as harmful to the child. *Id.* Thus, a less severe sanction for this type of conduct is warranted. Clearly the drafters of our present Crimes Code intended to differentiate between the varying types of unlawful removal and restraint based upon the degrees of harm potentially involved with such actions. Accordingly, we hold the trial court correctly determined the conduct engaged in by Appellee did not support a finding she violated the proscribed purpose contemplated by subsection (4) of § 2901(a).

¶ 13 Order affirmed.