EMAS, J.,
concurring in part and dissenting in part.
I concur with that portion of the majority’s opinion which affirms the convictions and sentences for two counts of aggravated child abuse. However, I respectfully dissent from that portion of the majority opinion which affirms the conviction and sentence for kidnapping.
Count II of the Indictment charged Ger-alyn Graham with kidnapping. In relevant part, this count charged that Geralyn Graham,
*131 between December 1, 2000, and December 31, 2000 ... without lawful authority did then and there forcibly, secretly, or by threat, confine, abduct or imprison another person, to wit: RILYA WILSON, a 4-year-old female child ..., and said confinement was without the consent of said victim’s legal custodians, Pamela Graham, the temporary legal custodian, and the Florida Department of Children and Families, the legal custodian, with the intent to interfere with the performance of any governmental function, to wit: The care, custody and responsibility for the welfare, safety and whereabouts of RILYA WILSON by the Department of Children and Families, a duly authorized agency of the State of Florida, in violation of s. 787.01(1) & (2), Florida Statutes....
(Emphasis added.)
Kidnapping is a first-degree felony punishable by life imprisonment, and is defined as follows:
(1)“Kidnapping” means forcibly, secretly, or by threat confining, abducting or imprisoning another person against his will and without lawful authority with intent to:
(a) Hold for ransom or reward, or as a shield or hostage; or
(b) Commit or facilitate commission of any felony; or
(c) Inflict bodily harm upon or to terrorize the victim or other person; or

(d) Interfere with the performance of any governmental or political function.

(2) Confinement of a child under the age of thirteen (13) is against his will within the meaning of subsection (1) if such confinement is without the consent of his parent or legal guardian.
(3) Whoever kidnaps a person is guilty of a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in chapter 775.
§ 787.01, Fla. Stat. (2000) (emphasis supplied).
The State did not charge Graham with kidnapping with the intent to hold the victim for ransom or as a hostage, to facilitate the commission of any other felony, or to inflict bodily harm upon or terrorize the victim. Rather, the State alleged that, by removing the child from the custody of the Department of Children and Families, Graham acted with the intent to “interfere with the performance of any governmental or political function.” I conclude that the relevant statutory language of section 787.01(l)(d) (“with intent to .... [¡Interfere with the performance of any governmental or political function”) is ambiguous and, in light of the overall statutory scheme of Chapter 787, Florida Statutes[9]; the history and source of the legislation[10]; the *132 intent and meaning of this language as expressed by the originating source upon which this legislation was based [11]; canons of statutory construction[12]; and case law from other jurisdictions construing the very same statutory language found in Florida’s kidnapping statute[13], I would hold that the legislative intent was to proscribe and punish the conduct in this case as false imprisonment rather than kidnapping. As a result, the kidnapping judgment and sentence should be reversed and *133 remanded for the purpose of correcting the judgment to the necessarily lesser-included offense of false imprisonment[14] and for resentencing on that conviction.
I therefore concur in part and dissent in part.

. See and compare § 787.01, Fla. Stat. (Kidnapping) (a first-degree felony punishable by life imprisonment, and requires proof of at least one of the four aggravating circumstances of intent or purpose); § 787.02 (False Imprisonment) (a third-degree felony, proscribing the same conduct as kidnapping but without any of the four aggravating circumstances of intent or purpose); § 787.03 (Interference with Custody, a first-degree misdemeanor); and § 787.04 (Removal of Child from State Contrary to Court Order, a third-degree felony). Given the majority’s holding, any person who interferes with custody or removes a child from the state contrary to court order (a first-degree misdemeanor and third-degree felony, respectively) would necessarily satisfy the “interfere with governmental or political function” element of kidnapping, thereby subjecting them to prosecution for a crime punishable by life imprisonment.

. The relevant version of Florida's kidnapping statute was first adopted in 1974, see Ch. 74-283, Laws of Florida (1974) and is patterned after the American Law Institute's (ALI) Model Penal Code provision, first pub *132 lished in 1960, which provided in pertinent part:

American Law Institute Model Penal Code § 212.1. Kidnapping

A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:
(a) to hold for ransom or reward, or as a shield or hostage; or
(b) to facilitate commission of any felony or flight thereafter; or
(c) to inflict bodily injury on or to terrorize the victim or another; or
(d) to interfere with the performance of any governmental or political function.

. When the American Law Institute proposed and published the Model Penal Code provisions, it was accompanied by comments to assist and guide state legislatures that were considering the adoption of one or more of the provisions of the Code. With regard to the kidnapping statute, the comments to the Model Penal Code provided:
Clause (d) ["to interfere with the performance of any governmental or political function'] raises to the aggravated felony level certain interference with political and governmental functions which might otherwise be misdemeanors or felonies of the third degree, e.g., abduction of witnesses, candidates, party leaders, officials [and] voters.
ALI, Model Penal Code, § 212.1, comment 3 to Tentative Draft No. 11 at 18 (1960) (emphasis supplied). See also ALI, Model Penal Code, § 212.1, comment 4 at 228 (1980) (noting that clause (d) was intended to "reach[ ] political terrorism and the like, and classifies such conduct as among the most serious kinds of unlawful confinement”).

. Florida Courts have often looked to the Model Penal Code and Comments as a guide for statutory construction of legislation adopted from and patterned after the Code. See e.g., State v. Ecker, 311 So.2d 104 (Fla.1975); Carroll v. State, 680 So.2d 1065, 1067 n. 3 (Fla. 3d DCA 1996) (referring to Model Code, on which Florida statute was based, in construing criminal attempt statute and renunciation defense); Bright v. State, 555 So.2d 1284 (Fla. 3d DCA 1990) (same, construing self-defense statute); D.A. v. State, 471 So.2d 147 (Fla. 3d DCA 1985) (same, construing loitering and prowling). See also, Carotene Products Co. v. United States, 323 U.S. 18, 25-27, 65 S.Ct. 1, 89 L.Ed. 15 (1944) (acknowledging, as a presumption of legislative intent, the "general rule that adoption of the wording of a statute from another legislative jurisdiction, carries with it that jurisdiction's previous judicial interpretations of the wording”); Slate v. Aiuppa, 298 So.2d 391, 394 (Fla.1974) (same); Flammer v. Patton, 245 So.2d 854, 858 (Fla.1971) (same); Dunn v. Doskocz, 590 So.2d 521, 523 (Fla. 3d DCA 1991) (noting that "where a Florida statute is patterned after a statute of another state, we may look to the judicial interpretation of the other state as persuasive authority in interpreting the Florida statute.”).

.See e.g., Flores v. State, 186 S.W.3d 398 (Mo.App.2006) (holding that mother's removal of her children from the court-ordered custody of the State and taking them to Arizona did not constitute kidnapping, as this conduct did not "interfere with the performance of a governmental or political function”); Spier v. State, 174 S.W.3d 539 (Mo. App.2005) (same, and acknowledging that this statute, patterned after the Model Penal Code, was intended for situations of political terrorism, such as the abduction of witnesses, candidates, party leaders, officials, and voters); Commonwealth, v. Barfield, 768 A.2d 343 (Pa.Super.2001) (affirming appeals court determination that non-custodial parent's removal of children from court-ordered placement in foster care did not support kidnapping charge, as such conduct did not "interfere with the performance of any governmental or political function”, the intent of which was to reach political terrorism and the like).

. See Fla. R.Crim. P. 3.620; State v. Sigler, 967 So.2d 835 (Fla.2007) (construing parallel statutory provision, section 924.34, Florida Statutes, to permit appellate court to direct trial court to enter judgment for a lesser offense when all elements of the lesser offense have been determined by the jury). Appellant conceded, in oral argument, that the evidence presented at trial was sufficient to sustain a conviction for false imprisonment.