**[J-25-2018] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 45 WAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered April 20, 2017 at No. |
| | : | 253 WDA 2016, reversing and |
| v. | : | vacating the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered September 14, 2015 at No. |
| TEX XAVIER ORTIZ, | : | CP-02-CR-0000547-2015 and |
| | : | remanding. |
| Appellee | : | |
| | : | ARGUED: April 11, 2018 |

**DISSENTING OPINION**

**JUSTICE WECHT** **DECIDED: NOVEMBER 21, 2018**

I join Justice Mundy's fine dissent.

In all cases implicating statutory construction, our first obligation is to find and apply the statutory language chosen by the General Assembly. As the Chief Justice acknowledges in his learned Majority Opinion, our obligation is to "adher[e] to terms of a statute that are plain and clear. . . ." Maj. Op. at 5. At issue here are: (a) the statute criminalizing kidnapping of a minor, a provision that requires proof only that the abduction or removal of a child was done with the intent to "facilitate commission of *any* felony or flight thereafter," (18 Pa.C.S. § 2901(a.1)(2) (emphasis added); and (b) the statute criminalizing interference with custody of children ("ICC") (18 Pa.C.S. § 2904(a)). In this case, the Commonwealth charged, and correctly graded, ICC as a felony. The question is whether ICC, a felony, constitutes "any" felony for kidnapping purposes. Clearly it does, as Justice Mundy ably explains. The plain, unambiguous statutory text suffices to mandate reversal of the Superior Court's order in this case.

I would go one step further. I would overrule *Commonwealth v. Barfield*, 768 A.2d 343 (Pa. Super. 2001), as it is that unsupportable Superior Court precedent upon which that court relied in this case. *Barfield* was premised upon the same divergence from the statutory text that afflicts both today's Majority Opinion and the Superior Court's opinion. Permitting *Barfield* to remain as binding authority can only allow for unnecessary perpetuation of error and expense.[1] Rather than enable that case to sow further confusion and litigation, we should overrule it.

In *Barfield*, a judge assigned Antonia Barfield's children to the custody of the Lancaster County Children and Youth Agency ("LCCYA"). *Barfield*, 768 A.2d at 343. LCCYA then placed the children in foster care. Barfield tried to regain custody, but was unsuccessful. However, the court permitted Barfield to have unsupervised visits with the children on the weekends. After the first weekend visit, Barfield failed to return the children to their foster mother. Barfield informed LCCYA that:

> the children were fine and that they had been taken into the custody of Provident Embassy World Religions and that [LCCYA] would receive an order overruling its custody order. Once this occurred, [Barfield] indicated that she would return to Lancaster. [Barfield] left similar messages for the caseworker stating that [Barfield] had taken the children on her own, that [LCCYA] no longer had jurisdiction, and that eventually [Barfield] planned on coming back to Lancaster.
>
> The caseworker contacted the Lancaster City Police and a warrant was subsequently issued for [Barfield's] arrest.

---

[1] The Commonwealth, as appellant, has not asked us to overrule *Barfield*. As I have explained in the past, both for the Court and individually, this should not be a categorical impediment to overruling indefensible, unsustainable, or conflicting case law. *See William Penn Sch. Dist. v. Pennsylvania Dep't of Educ.* 170 A.3d 414, 447 n.49 (2017) ("We would encourage the perpetuation of poorly reasoned precedent were we to permit ourselves to revisit the soundness of our case law only when expressly invited to do so based upon a given party's tactical decision of whether to attack adverse case law frontally . . . or to attempt more finely to distinguish the adverse decisions. The scope of our review is not so circumscribed."); *accord, Cagey v. Commonwealth*, 179 A.3d 458, 473 n. 7 (Pa. 2018) (Wecht, J., concurring).

*Id.* at 344.

Barfield was charged with two counts of ICC and two counts of kidnapping. The specific subsection of the kidnapping statute invoked required the Commonwealth to prove that Barfield unlawfully removed the children with the intent to "interfere with the performance by public officials of any governmental or political function." 18 Pa.C.S. § 2901(a)(4). A jury convicted Barfield on all counts, but the trial court later vacated the kidnapping convictions. The Commonwealth appealed, inquiring of the Superior Court "whether the trial court erred as a matter of law in determining that § 2901(a)(4) of the kidnapping statute was not intended to address a situation where a non-custodial parent removes her children from the custody of a social service agency in violation of a court ordered placement plan?" *Barfield*, 768 A.2d at 344.

The question before the Superior Court in *Barfield* is nearly identical to the one that we must resolve in the case *sub judice*: Can a person be charged and convicted under both the kidnapping and ICC statutes when that person unlawfully removes a child in violation of a custody order? The *Barfield* Court said "no." Today, the Majority says "no" as well. Based upon the statutory language, this is manifest error. We should reject *Barfield*, and we should say "yes."

The Superior Court panel in *Barfield* acknowledged that a dependency custody order, and its enforcement, necessarily implicates a judge and a caseworker, both of whom are governmental officials performing governmental functions. *Id.* at 346. Nonetheless, even though the removal of the child seemingly fell squarely within the ambit of the kidnapping statute (specifically, Section 2901(a)(4)), the court decided that the General Assembly intended to classify such actions as a "separate and distinct" crime: ICC. *Barfield*, 768 A.2d at 346. The Superior Court reasoned that, to hold that a person

could be convicted of both kidnapping and ICC would render the ICC statute superfluous, in contravention of the General Assembly's presumed intent. *Id.* at 346.

To support its conclusion, the appellate panel ventured that Section 2901(a)(4) of the kidnapping statute and the ICC statute aim to serve distinct interests. The kidnapping statute, generally, protects a victim from the "physical danger or terrorization" that typically accompanies an abduction. *Barfield*, 768 A.2d at 347 (citation and quotation marks omitted). The ICC statute seeks, by contrast, to protect the continued "maintenance of parental custody against all unlawful interruption." *Id.* (citation and quotation marks omitted). The panel further distinguished the two crimes by opining that, in ICC situations, "the defendant is usually a parent or other relative who is favorably disposed toward the child and does not think of his action as harmful to the child." *Id.* at 347-48. The Superior Court opined that the General Assembly intended to treat the two situations differently and intended to impose a "less severe" sanction for less "harmful" conduct by enacting the ICC statute. *Id.* The *Barfield* panel reasoned that the General Assembly created a hierarchy of offenses based upon the "degrees of harm potentially involved with such actions." *Id.* at 348. The Superior Court summarized the crux of its holding by explaining that, "[w]hile § 2901 does not explicitly exempt parents from criminal prosecutions for abducting their own children[,] we are not persuaded the legislature intended a parent to be prosecuted under subsection (4) and subject to its more severe penalty for the same conduct proscribed by § 2904(a)." *Id.* at 346.

The flaw in the *Barfield* approach is the one astutely identified by Justice Mundy in the present case: the Superior Court overlooked the plain and unambiguous statutory text in order to pursue and effectuate what it presumed to be the General Assembly's purported intent. Today's Majority makes the same interpretive misstep. This jurisprudential method, of course, is foreclosed expressly by the Statutory Construction

Act. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). The plain language of Section 2901(a)(4) permitted prosecution of Barfield for kidnapping as a consequence of her actions. No further inquiry was necessary, or, indeed, permissible. That the General Assembly may (or should) have intended the two relevant crimes to be separate and distinct (and I am not entirely persuaded that it did) does not authorize us to disregard or overlook the actual language enacted by the lawmakers.

Putting the inherent flaws in the *Barfield* court's analysis to the side, the statutory law in any event evolved away from that precedent in the intervening years. For instance, in 2012, the General Assembly amended the kidnapping statute and added a specific provision for kidnapping of a minor, including the language at issue in the case *sub judice*, "[t]o facilitate commission of any felony or flight thereafter." *See* 18 Pa.C.S. § 2901(a.1)(2). More importantly, in December 2002, the General Assembly enacted 42 Pa.C.S. § 9303, which became effective on February 7, 2003. Section 9303 states:

> Notwithstanding the provisions of 1 Pa.C.S. § 1933 (relating to particular controls general) or any other statute to the contrary, where the same conduct of a defendant violates more than one criminal statute, the defendant may be prosecuted under all available statutory criminal provisions without regard to the generality or specificity of the statutes.

*Id.* This provision specifically undoes the *Barfield* court's implicit holding that similar crimes are an either-or proposition—that offenses governing the same or similar conduct cannot both be charged at the same time. Section 9303 restores the vast discretion that prosecutors enjoy in charging decisions. *See generally Commonwealth v. McNeal*, 120 A.3d 313, 326 (Pa. Super. 1997) (citing *United States v. Batchelder*, 442 U.S. 114 (1979)).

For all of these reasons, I join Justice Mundy' dissent. However, rather than end where Justice Mundy does, I also would ensure that *Barfield* no longer can cause unjustified and unnecessary difficulties for our courts, litigants, or stakeholders.