J-A26007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SANDRA SALMON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE PHILADELPHIA | : | |
| CONTRIBUTIONSHIP INSURANCE | : | |
| COMPANY | : | No. 416 EDA 2020 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered January 7, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 171002515

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:        **FILED:  FEBRUARY 19, 2021**

Appellant, The Philadelphia Contributionship Insurance Company ("PCIC"), appeals from the judgment of $293,246.17, entered in favor of Appellee, Sandra Salmon, following a non-jury trial.  We affirm in part and reverse in part.

The trial court summarized the background of this case as follows:

**History**

This matter arises from damage to an insured property located in New Jersey, caused by a broken waste line.  On June 15, 2017, [Ms.] Salmon … commenced suit seeking to enforce the contract of insurance and for bad faith.[1]

---

[*] Former Justice specially assigned to the Superior Court.

[1] Our review of the docket shows that Ms. Salmon commenced suit on October 19, 2017.

On May 2, 2018, the Honorable Abbe F. Fletman granted judgment on the pleadings in favor of [PCIC], and dismissed [Ms.] Salmon's bad faith claim, without prejudice.

On September 26, 2019, the case proceeded to trial before this court, sitting without a jury. [Ms.] Salmon presented testimony from … herself, her son, who served as general contractor for the repairs, and her private adjuster, along with various exhibits. [PCIC] presented several documents and photographs, and then rested without presenting any witnesses. At the close of the case, the court granted [Ms.] Salmon's motion to amend the complaint to add claims for bad faith and punitive damages, based upon the evidence adduced.

The court found for [Ms.] Salmon and awarded $6,701.38 to [Ms.] Salmon for mold damage; stipulated damages for contents of $8,044.79; loss of income for the rental portion of the property in the amount of $39,680; additional living expenses of $11,200; $98,100 for repairs; $54,520 in attorney's fees; and $75,000 in punitive damages.

[PCIC] filed a timely motion for post-trial relief, to which [Ms.] Salmon responded and [PCIC] replied. By order dated November 25, 2019, the motion was denied. A final judgment for [Ms.] Salmon was entered on January 7, 2020. This timely appeal followed.[2]

**Facts**

[Ms.] Salmon first became aware of the leaking sewer (stack) pipe on March 15, 2017. Over the course of hours, waste water started coming down, the ceiling started caving in[,] and feces were being released. There was also a very bad smell that could be detected even outside the property. [Ms.] Salmon contacted a plumber who advised her to call her insurer, because the matter was a big job and he couldn't even begin to do an estimate because of the hazardous conditions caused by the leak. [Ms.] Salmon called her insurance agency the next day and spoke to a representative of [PCIC] a few days later.

[Ms.] Salmon asked [PCIC] to send an adjuster to review the situation, but her request was denied. Because of the hazardous

_____

2 The trial court did not order PCIC to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

condition, [Ms.] Salmon, her family members[,] and her tenant vacated the property on or about [March] 16, 2017.  The situation in the house got worse over time as the leaked material remained in the walls and ceiling[,] and some leakage continued.  The flow bled over into other areas of the kitchen, the boiler room, the bedroom[,] and the ground floor hallway.  The walls on the upper floors were also opened to access the broken pipe.

Several weeks later[,] a person with Resto Corporation, representing [PCIC], came and inspected the entire house and roof.  On March 27, 2017, [PCIC] issued a check for $5,519.68.

The water that came out of the broken pipe was biohazardous, meaning that the property could not be lived in.  Items like drywall and wood fixtures/furniture could not be cleaned, but had to be removed and discarded.

On the recommendation of the plumber, [Ms.] Salmon contacted New Jersey Water and Mold to mitigate the hazardous condition.  That work was done on or about April 6, 2017.  In the process of mitigating the hazard, sections of drywall and bathroom tile were removed, as were contaminated fixtures [that] could not be cleaned.   The first floor was almost entirely gutted in the remediation process.  The second floor bathroom wall was opened in the initial plumbing repair and remediation.  Likewise, the third floor apartment bathroom and kitchen walls were opened for repair and hazardous waste remediation.

[Ms.] Salmon then hired Property Loss Advisers, a private adjuster, to assist her.

After receiving a quote of approximately $200,000 to repair the property, [Ms.] Salmon contacted her son, Shawn Brown, who worked as [a] contractor, to coordinate the repairs.  Work started in early June 2017.  [Ms.] Salmon was not able to again rent the top floor until July 2018.

[Ms.] Salmon's policy with [PCIC] included coverage for: loss of use, to reimburse her for expenses incurred due to her being unable to occupy her home; lost rental [income]; damage to the property, and access and labor to repair the pipe, excluding the actual pipe itself; contents damage, which was stipulated as $8,044.79; the actual cost to repair and replace the damage, less any deductible; and any hidden damages that cannot be seen until walls are removed.

The invoice for the repairs to the property, dated March 1, 2018, was submitted to [PCIC]. The invoice was never contested by [PCIC] prior to commencement of litigation.[3] The contents loss and the hazardous waste mitigation costs are uncontested and were not paid prior to trial. The sole payment made by [PCIC] was the initial check for $5,519.68.

Trial Court Opinion ("TCO"), 5/22/20, at 1-4 (internal citations omitted).

Presently, PCIC raises the following issues for our review:

[1]. Whether the trial court erred by admitting the purported expert testimony of [Ms. Salmon's] son, when it is undisputed that no expert report, as required by Rule 4003.5, was ever provided[.]

[2]. Whether the trial court erred by allowing Bishal Patel, the owner of the public adjustment firm retained by [Ms. Salmon], to testify as an expert, when he was merely serving as the conduit for the hearsay opinions contained in a report signed by a different adjuster, and [Ms. Salmon] made no showing that the author of the report was unavailable to testify as to his opinions, as required by Pa.R.E. 804(a)(5)[.]

[3]. Whether the trial court erred by allowing [Ms. Salmon] to amend her pleadings to include a common law insurance bad faith claim, under New Jersey law, when such motion was not made until after PCIC rested its case, immediately prior to the oral verdict [that] was rendered by the trial court[.]

[4]. Whether the trial court erred by denying PCIC's Motion for Judgment Notwithstanding … the Verdict on the common law bad faith claim, when the legal standard for insurance bad faith, as defined by New Jersey law, was not, and could not be, met[.]

[5]. Whether the trial court erred by awarding counsel fees to [Ms. Salmon] on a first-party insurance bad faith claim based upon New Jersey law, when the text of the applicable rule and controlling New Jersey case law explicitly prohibits counsel fees in the context of first-party claims.

_____

[3] We note our confusion with this statement, given that the docket shows that Ms. Salmon commenced suit on October 19, 2017, which would have been before the invoice was submitted to PCIC on March 1, 2018.

[6]. Whether the trial court erred by awarding punitive damages in this insurance case, when the applicable New Jersey law generally does not provide for punitive damages on a first[-]party insurance claim[.]

PCIC's Brief at 7-8.[4]

## **Issue 1**

In PCIC's first issue, PCIC argues that the trial court erred in admitting the expert testimony of Shawn Brown, Ms. Salmon's son and general contractor. PCIC claims that Mr. Brown never prepared an expert report pursuant to Pa.R.C.P. 4003.5. *Id.* at 55. Nevertheless, PCIC says that the trial court allowed him to testify as an expert in the areas of: 1) construction; and 2) the costs of repairs to the property. *Id.* Specifically, PCIC explains that Mr. Brown "offered testimony on direct examination that: 1) the $98,100 in his company's 'invoice' was all spent on necessary repairs to his mother's property; and 2) that those repairs were causally related to the loss at issue…." *Id.* at 57-58. PCIC claims that such evidence "is the lynchpin of [Ms. Salmon's] coverage claim" as ["t]he insurance policy provides coverage for 'the necessary amount actually spent to repair or replace the damaged building.'" *Id.* at 58 (citation omitted). According to PCIC, "this evidence was improperly admitted and affected the outcome of the trial, thereby necessitating a new trial." *Id.* at 55-56.

"Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court."

---

[4] We have re-ordered PCIC's issues for ease of disposition.

***Weiner v. Fisher***, 871 A.2d 1283, 1285 (Pa. Super. 2005) (citation omitted).

"We may reverse only if we find an abuse of discretion or error of law." ***Id.***

Rule 4003.5 provides, in relevant part, that:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1[5] and ***acquired or developed in anticipation of litigation or for trial***, may be obtained as follows:

(1) ***A party may through interrogatories require***

(A) ***any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and***

(B) subject to the provisions of subdivision (a)(4),[6] ***the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.*** The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

(2) Upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

(A) such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate, and

(B) the provisions of subdivision (a)(4) of this rule.

\*\*\*

_____

[5] Pa.R.C.P. 4003.1 addresses the scope of discovery generally.

[6] Subdivision (a)(4) generally prohibits the discovery of communications between another party's attorney and any expert who is to be identified pursuant to subdivision (a)(1)(A).

(b) An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

(c) ***To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule***, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto. ***However, the expert shall not be prevented from testifying as to facts or opinions on matters on which the expert has not been interrogated in the discovery proceedings.***

Pa.R.C.P. 4003.5 (a)(1), (a)(2), (b), (c) (emphasis added).

Specifically, with respect to Rule 4003.5, PCIC argues that:

Testifying experts must, in a signed report, "state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Pa.R.C.P. 4003.5(a)(1)(B). Here, it was undisputed that Mr. Brown never prepared such a report. Further, there was never any suggestion by [Ms. Salmon] that the failure to produce an expert report from her son was "the result of extenuating circumstances beyond the control of the defaulting party" so as to enable the court "to grant a continuance or other appropriate relief." Pa.R.C.P. 4003.5(b).

PCIC's Brief at 56 (internal citation omitted).

Troublingly, this argument ignores important aspects of Rule 4003.5, and leaves us unpersuaded that, to the extent it even applies here, Ms. Salmon violated it. First, PCIC does not address whether Mr. Brown acquired or developed the facts known and opinions held by him in anticipation of litigation or for trial. Based on the record, it seems likely that he did not develop them in anticipation of litigation or for trial, given that he "testified to

the work he oversaw in his capacity as an unpaid general contractor for the repair to his mother's property." TCO at 6 (citation omitted); *see also id.* at 3 ("After receiving a quote of approximately $200,000 to repair the property, [Ms.] Salmon contacted her son, Shawn Brown, who worked as a contractor, to coordinate the repairs.") (citation omitted). However, PCIC does not deal with that issue at all, and we decline to do so for it. *Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. … This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (internal quotation marks and citations omitted).

Second, PCIC has not demonstrated that it required Ms. Salmon, through interrogatories, to disclose the identity of expert witnesses she expected to call at trial, the subject matter on which those experts would testify, and the substance of their facts and opinions. Here, PCIC only mentions in its brief one interrogatory it propounded and Ms. Salmon's response to it, namely:

> Have you retained any expert for this litigation? For each expert, identified in your answers to the preceding Interrogatories, has such expert expressed an opinion as to any uses to which the plaintiffs' real and/or personal property, as damaged, could be adapted?
>
> If so, kindly state:
>
> (a) Each use to which, in the opinion of such expert, the property could be adapted; and

(b) The most effective use of the property, in the opinion of the expert.

Objection.  The Interrogatory is made vague and ambiguous by use of the term "adapted" which is not clearly defined and is subject to multiple interpretations such that the Plaintiff is unable to respond.

PCIC's Brief at 15 (citation and emphasis omitted).

PCIC claims that, by way of this response, Ms. Salmon declined to identify any experts, and subsequently did not produce any expert reports in accordance with Rule 4003.5.  *See id.*  However, PCIC's interrogatory **did not** clearly ask Ms. Salmon to identify each person she expected to call as an expert witness at trial, nor did it clearly request for each expert she identified to state the substance of the facts and opinions to which the expert would testify and a summary of the grounds for each opinion.  Instead, PCIC vaguely requested that Ms. Salmon state "[e]ach use to which, in the opinion of such expert, the property could be adapted[,]" and "[t]he most effective use of the property, in the opinion of the expert."  **See id.**  Accordingly, given the interrogatory propounded by PCIC, we are not convinced that Mr. Brown needed to prepare an expert report pursuant to Rule 4003.5.  **See Corrado v. Thomas Jefferson Univ. Hosp.**, 790 A.2d 1022, 1029 (Pa. Super. 2001) ("The purpose of requiring a party to disclose, **at his adversary's request**, 'the substance of the facts and opinions to which the expert is expected to testify' is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony.") (citation omitted; emphasis added); **see also** Pa.R.C.P. 4003.5(c) ("[T]he expert shall not be prevented from testifying

as to facts or opinions on matters on which the expert has not been interrogated in the discovery proceedings."); Explanatory note to Pa.R.C.P. 4003.5(c) ("[I]f the inquirer limits his inquiry to one or more specific issues only, the expert is free to testify at trial as to any other relevant issues not included in the discovery. Therefore, what happens at trial may depend upon the manner in which the expert is interrogated. The inquirer may be well advised to conduct his discovery broadly, by paraphrasing the language of 4003.5(a), which will require the expert to state all his opinions and grounds, thus preventing surprise testimony at trial concerning grounds never raised during the discovery.").[7]

Moreover, with respect to Mr. Brown's testimony, the trial court explained:

> [Mr.] Brown, [Ms.] Salmon's son, testified to the work he oversaw in his capacity as an unpaid general contractor for the repair to his mother's property.
>
> Mr. Brown was identified in discovery. He was also listed as a witness, with the name of his company, in [Ms.] Salmon's March 22, 2019[] Pretrial Settlement Memorandum, six months before trial, and his estimate was identified as an exhibit. Indeed, [PCIC] discussed Mr. Brown and his company in its own April 17, 2019[]

---

[7] As PCIC's argument relies on Rule 4003.5, which specifically pertains to interrogatories, we do not consider any document production requests made by PCIC in our analysis of its first issue. PCIC develops no argument about the relationship between Rule 4003.5 and document production requests, and we decline to craft that argument for it. Similarly, PCIC does not proffer a meaningful analysis regarding the effect, if any, Rule 4003.5 has on a court's case management order directing that a plaintiff serve its expert reports, if applicable, by a certain date. Again, we will not develop arguments on behalf of PCIC. **See Coulter**, **supra**.

Pretrial Conference Memorandum.[1]  However, Mr. Brown was not identified as an expert, *per se*, and he prepared no report other than a statement of the costs incurred in making the repairs.

> [1] In [Ms.] Salmon's April 29[,] 2019[] response to one of [PCIC's] motion *in limine*, she stated:
>
>> Shawn Brown/Bentley's ICM[8] was hired to coordinate and perform the repairs to [Ms. Salmon's] property as a result of the March 15, 2017 loss.  Shawn Brown/Bentley's ICM conducted this included [*sic*] a full inspection of the property damage, personal observations of the extent of the damage, measurements taken during the inspection and repairs, coordination of all the repairs, and personally observing and/or performing all said necessary repairs.  Shawn Brown/Bentley's ICM is thus qualified to testify to the cause, scope, and price of all the necessary repairs.  This information meets the low relevance threshold for determining the issues in this case.
>
> [Ms. Salmon's] Memorandum in Opposition to [PCIC's] Motion *in L[i]mine*[, 4/29/19, at] 3 [(unnumbered)].

Although accepted as an expert, Mr. Brown's testimony proved factual in nature.  Indeed, beyond a question by defense counsel in *voir dire* of Mr. Brown, the word opinion was not uttered during the entire course of his testimony, nor was he asked about whether any aspect of his testimony was to a reasonable degree of professional certainty.  He testified to what was repaired by the various contractors and what they charged for those repairs.  Even the testimony by Mr. Brown as to "necessary" [*sic*] was factual in nature.  If some opinion aspect of the testimony could be construed, that testimony was admissible as lay opinion under Pa.R.E. 701.[9]

---

[8] Based on our review of the record, it appears that "ICM" stands for "Investing, Consulting, and Management."

[9] Rule 701 provides that, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally

> Because the defense had no objection to him testifying as a fact witness, [PCIC] suffered no prejudice from Mr. Brown's factual testimony.

TCO at 6-7 (internal citations omitted); **see also** Ms. Salmon's Brief at 30 ("[T]he determination of whether Shawn Brown was an expert had no bearing on the verdict. Whether Brown was admitted as an expert or not, he would have elicited the same testimony as a fact witness.").

Problematically, PCIC does not adequately respond to the trial court's reasoning in its brief. Specifically, despite insisting that Ms. Salmon had to present expert testimony, PCIC does not explain **why** Mr. Brown needed to testify as an expert — instead of as a fact witness — as to the cause and costs of any necessary repairs. PCIC does not discuss, let alone mention, Rules 701 and 702, and it does not delve into why Mr. Brown's testimony on repairs included opinion testimony and/or required specialized knowledge beyond that possessed by the average layperson. Again, we decline to develop these arguments on behalf of PCIC. **See Coulter**, **supra**. As PCIC has not demonstrated that Ms. Salmon violated Rule 4003.5, and that Mr. Brown could not have testified to the costs, cause, and necessity of repairs as a fact witness, his failure to prepare an expert report is of no moment. Accordingly, PCIC's first issue warrants no relief.

## Second Issue

---

based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Pa.R.E.] 702 [(testimony by expert witnesses)]." Pa.R.E. 701.

- 12 -

In PCIC's second issue, it alleges that the trial court "erred in allowing Bishal Patel to offer hearsay expert testimony drawn from the report of Vincent LoBracco." PCIC's Brief at 61 (unnecessary capitalization and emphasis omitted). It argues that "Mr. Patel was offered as an expert to testify, essentially, about: 1) the opinions of another adjuster, Vincent LoBracco, whom was allegedly now in Florida and 'unavailable' to testify; and 2) the correct interpretation and application of the insurance policy coverage." *Id.* at 62. PCIC insists that Rule 4003.5(a)(1)(B) requires that an expert sign his report, and says that "[i]t cannot be disputed that a purported 'expert' witness may not simply be used as a conduit for hearsay from a non-testifying expert. When an 'expert' witness did not sign the expert report and testifies simply to parrot the language of a report allegedly prepared by another, this must be excluded." *Id.* at 61. Moreover, PCIC maintains that "Mr. Patel's legal opinion on how the insurance policy terms apply could not be used by the [c]ourt to interpret a contract. Pennsylvania Rule of Evidence 702(b) permits expert testimony when it is helpful to determine a *fact* in issue; it does not authorize an expert to engage in contract interpretation." *Id.* at 64-65 (footnote omitted; emphasis in original); *see also* Pa.R.E. 702(b) ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: … (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue….").

In permitting Mr. Patel to testify as an expert, the trial court explained:

- 13 -

In this case, the issue was whether permitting Mr. Patel to testify pursuant to a report he prepared with a subordinate, who signed the report, violated [Rule 4003.5]. The [c]ourt concluded that there was no unfair surprise to [PCIC].

Here, the record establishes that Mr. Patel wrote the report with another adjuster, who was unavailable at the time of trial. The report was provided in discovery and no additional discovery requests were propounded regarding the report. Mr. Patel was disclosed as a witness in [Ms.] Salmon's March 22, 2019[] Pretrial Settlement Memorandum, six months before trial. His company's report and records were likewise listed as exhibits.

There is no claim that Mr. Patel testified to facts or opinions beyond the report. To the contrary, Mr. Patel's testimony was limited to the aspects of the report as to which he was able to testify, which resulted in exclusion of evidence on calculations to which Mr. Patel was not privy.

Under these circumstances, there was no surprise or unfairness to the defense in permitting Mr. Patel to testify to the aspects of the report that he co[-]authored, and [PCIC's] objection to his testimony was properly overruled.

TCO at 5-6 (citations omitted).

PCIC does not convince us that we should disturb the trial court's ruling. Initially, as discussed in Issue 1, *supra*, PCIC has not sufficiently demonstrated that it propounded interrogatories pursuant to Rule 4003.5, asking Ms. Salmon to identify her experts and have them state the grounds for their opinions. Therefore, PCIC has not persuaded us that Mr. Patel had to sign the expert report, let alone produce one, pursuant to Rule 4003.5(a)(1)(B). Further, PCIC does not address the trial court's observation that Mr. Patel's testimony was limited to the aspects of the report to which he was able to testify, and that evidence on calculations to which Mr. Patel was not privy was excluded. Accordingly, based on the arguments before us, we reject PCIC's

claim that Mr. Patel simply parroted the language of a report prepared by someone else.

We also deem waived PCIC's claim that Mr. Patel's opinion on how the insurance policy terms apply violated Rule 702(b). To begin with, PCIC does not indicate how it preserved this issue below in contravention of our Rules of Appellate Procedure. **See** Pa.R.A.P. 2117(c) (requiring, where an issue is not reviewable on appeal unless raised or preserved below, a statement of place of raising or preservation of issues); Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information."). "Our appellate courts have long held that an [appellant] who does not follow [Rule] 2117(c) and [Rule] 2119(e) waives the related issues due to the defects in his brief." **Young v. S.B. Conrad, Inc.**, 216 A.3d 267, 274 (Pa. Super. 2019). "[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." **Commonwealth v. Baker**, 963 A.2d 495, 502 n.6 (Pa. Super. 2008) (citations omitted). Moreover, our own review of the record shows that PCIC did not object to Mr. Patel's testimony on the basis of Rule 702(b) at trial, nor did it include that particular issue in its post-trial motion. **See** Pa.R.C.P. 227.1(b) (stating that post-trial relief may not be granted

- 15 -

unless the grounds therefor were raised at trial and are specified in the post-trial motion); **_Jones v. Ott_**, 191 A.3d 782, 787 (Pa. 2018) ("In order to preserve an issue for appellate review, a litigant must place a timely, specific objection on the record."); N.T. Trial, 9/26/19, at 92-93; PCIC's Motion for Post-Trial Relief, 10/7/19. Thus, this claim is doubly waived.

Although not included in PCIC's statement of the questions involved, PCIC next contends that, "after admitting Mr. Patel's testimony, the trial court incorrectly precluded PCIC from cross-examining Mr. Patel about a lower estimate, which was prepared by Mr. Patel's company and attached to the complaint." PCIC's Brief at 66 (unnecessary capitalization and emphasis omitted). PCIC avers that this exclusion "prejudiced PCIC's ability to impeach Mr. Patel with this obvious and indisputable inconsistency." **_Id._** Because PCIC failed to include this issue in its statement of questions involved, it is waived. **_See_** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **_Wirth v. Com._**, 95 A.3d 822, 858 (Pa. 2014) ("[Rule 2116(a)] is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.") (citation omitted).

Nevertheless, even if not waived, we would conclude that this issue lacks merit. PCIC argues:

> Under Pennsylvania law, "[s]tatements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on

- 16 -

the party." ***Cogley v. Duncan***, 32 A.3d 1288, 1292 (Pa. Super. … 2011). Writings that form the basis of a claim must be attached to a pleading. ***See*** Pa.R.C.P. 1019(i).

Under Pennsylvania Rule of [E]vidence 611(b), cross-examination of a non-party witness properly encompasses matters affecting credibility. In this case, [Ms. Salmon] attached a June 23, 2017 estimate by Richard Davis, of Property Loss Advisors, as Exhibit "B" to her Complaint. That estimate totaled $47,268.21 for damages to the dwelling, almost $50,000 less than the amount claimed by Messrs. Patel and Brown at trial. After arguing that Mr. Patel can testify as the owner of the company and "co[-]author" of a report written [by] Mr. LoBracco, [Ms. Salmon] changed positions and argued that Mr. Patel's testimony as [to] the estimate of a different employee was irrelevant:

> [Ms. Salmon's counsel]: Yes, Your Honor, and the reviewing of the document is relevant regarding testimony. He just testified he did not author it, was not involved in the authoring of it.
>
> THE COURT: I agree. It still doesn't get us anywhere. If he reviews it and he's able to tell you with certainty that he [has] seen it before, it still doesn't get us to the point where he can testify about the v[e]racity of the calculations there if he didn't participate in them. So that's sustained. Next question.

***See*** N.T. at … 11[0].

[Ms. Salmon], by attaching an estimate from Property Loss Advisors to her pleading, judicially admitted that she was claiming $47,268.21, based upon an estimate *from Property Loss Advisors*. Mr. Patel *owns* Property Loss Advisors. The trial court precluded PCIC from questioning Mr. Patel about this estimate on relevance grounds, although relevance is defined as evidence having "any tendency to make a fact more or less probable than it would be without the evidence" and that fact is "of consequence" in determining the action. Pa.R.E. 401.

There are a number of relevant, if not compelling, reasons for Mr. Patel to be cross-examined on the roughly $50,000 disparity between one of his employee's property damage estimates and the eventual amount claimed due at trial. This is doubly true in a circumstance where [Ms. Salmon] sought to admit a hearsay expert report through Mr. Patel based on his status as owner and

- 17 -

alleged "co[-]author" of the report, but then objected to Mr. Patel being questioned on the less favorable report of another of his employees.

PCIC's Brief at 66-68 (citation omitted; emphasis in original; some brackets added).

We would reject this argument for two reasons. First, PCIC has not convinced us that Ms. Salmon made a judicial admission that she was claiming $47,268.21 in damages because she attached an estimate for that amount to her complaint. According to the **Cogley** case cited by PCIC, "[f]or an averment to qualify as a judicial admission, it must be a **clear and unequivocal admission of fact**. … An admission is not conclusively binding when the statement is indeterminate, inconsistent, or ambiguous." **Cogley**, 32 A.3d at 1292 (citation omitted; emphasis added). Here, Ms. Salmon stated in her complaint that the broken plumbing line resulted "in damage to the insured premises and the contents thereof together with a loss of use of the premises **in an amount in excess of $50,000**[,"] and she stated that a "copy of the **preliminary estimates of losses** are attached…." Complaint, 10/19/17, at ¶ 4 (emphasis added). This allegation is far from a clear and unequivocal admission that Ms. Salmon's damages amounted to $47,268.21.

Second, we disagree with PCIC that the trial court abused its discretion in precluding it from questioning Mr. Patel about the $47,268.21 estimate. Mr. Patel did not testify on direct examination about the costs associated with any damages, he did not participate in the repairs at all, and he did not review any documentation regarding the repairs. **See** N.T. at 106-07. Instead, he

only testified on direct about the coverages afforded by the insurance policy, and stated that he did not participate in the estimate writing. ***See id.*** at 91, 93-101, 109. Thus, it would be inappropriate to question Mr. Patel about the veracity of the calculations that went into the $47,268.21 estimate. Accordingly, even if properly raised, this issue would warrant no relief.

## Issue 3

In PCIC's third issue, it claims that the "trial court erred by allowing [Ms. Salmon] to amend her pleadings to include a common law insurance bad faith claim, under New Jersey law, when such motion was not made until after PCIC rested its case, immediately prior to the oral verdict [that] was rendered by the trial court[.]" PCIC's Brief at 7. According to PCIC, the trial court's decision to permit this late amendment resulted in manifest prejudice to it. ***See id.*** at 39.[10]

> At the outset of our evaluation of this claim, we recognize that,
>
> [w]hen reviewing a trial court's ruling on a party's petition to amend we must bear in mind that the trial court is granted broad discretion in evaluating amendment petitions. The sound discretion of the trial court will not be disturbed on appeal absent a showing of an abuse of that discretion.

***Horowitz v. Universal Underwriters Ins.***, 580 A.2d 395, 398 (Pa. Super. 1990) (citations omitted). "[A]n abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or

---

[10] PCIC also argues, in a separate issue, that Ms. Salmon "cannot establish a bad faith claim under New Jersey law, and the amendment was consequently against a positive rule of law (thereby rendering it futile)." PCIC's Brief at 35 n.4. We do not address this argument in our analysis of PCIC's third issue.

capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **Rettger v. UPMC Shadyside**, 991 A.2d 915, 924 (Pa. Super. 2010) (citations omitted).

Pennsylvania Rule of Civil Procedure 1033 addresses amendments to pleadings. In relevant part, it sets forth that:

> A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033(a).

With respect to Rule 1033, this Court has explained:

> [Rule 1033] has repeatedly been interpreted as requiring the liberal evaluation of amendment requests, in an effort to secure a determination of cases based upon their merits, rather than based upon a mere technicality. Thus, Rule 1033 has been interpreted to permit amendments to pleadings at any time, including before, during and after trial.
>
> Despite this liberal amendment policy, Pennsylvania appellate courts have repeatedly ruled that an amendment will not be permitted where it is against a positive rule of law, or where the amendment will surprise or prejudice the opposing party.

**Horowitz**, 580 A.2d at 398 (internal citations omitted).

Specifically, regarding prejudice to the opposing party, we have said that,

> prejudice that would prevent the grant of an amendment must be … something more than a detriment to the other party since any amendment almost certainly will be designed to strengthen the legal position of the amending party and correspondingly to weaken the position of the adverse party. Thus, an allegation of

prejudice will be sufficient to deprive another party of the right to amend only if the detriment suffered would go beyond that which would normally flow from the allowance of an amendment. Such prejudice is most often a function of the lateness with which the proposed amendment is offered:

> All amendments have this in common: they are offered *later in time* than the pleading which they seek to amend. If the amendment contains allegations which would have allowed inclusion in the original pleading (the usual case), then the question of prejudice is presented by the *time* at which it is offered rather than the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed.

***Rettger***, 991 A.2d at 928-29 (internal citations, brackets, and quotation marks omitted; emphasis in original); ***see also Horowitz***, 580 A.2d at 399 ("[T]he lateness of a proposed amendment is only to be considered insofar as it presents a question of prejudice to the opposing party. It has been consistently held that unreasonable delay, by itself, is an insufficient ground upon which to base a denial of an amendment motion.") (internal quotation marks and citations omitted).

Here, in permitting Ms. Salmon to amend her complaint to include a bad faith claim, the trial court opined:

> [PCIC] cannot credibly argue either surprise or prejudice. The issue of bad faith was in the case from its inception. Count II of [Ms.] Salmon's [c]omplaint included the factual predicate for the bad faith claims, as well as requests for punitive damages and

counsel/attorney's fees.[11]   [In its motion for judgment on the pleadings, PCIC] argued that Pennsylvania's bad faith statute did not apply to this New Jersey insured, and that New Jersey law applied.   Judge Fletman accepted that argument and dismissed the bad faith count, but she did so "**WITHOUT PREJUDICE**." (Emphasis in the original).

In amending to raise her bad faith claims under New Jersey [l]aw, [Ms.] Salmon merely did what [PCIC] argued in its [m]otion for [j]udgment on the [p]leadings, and which Judge Fletman clearly contemplated in dismissing the bad faith count, without prejudice: she brought the claims under New Jersey [l]aw.   Indeed, more than 21 months before trial, [PCIC] itself averred[,] "[Ms. Salmon's] claims of coverage and bad faith are governed by New Jersey [l]aw."

Additionally, the amendment was based on facts in the case from [its] inception, many of which applied as much to a bad faith claim as they did to the breach of contract claim.   The amendment comported with the evidence at trial, and [PCIC's] own failure to anticipate and present a defense, or ask for leave to do so, was not a reason to deny the amendment.   Under all the circumstances of this case, [Ms. Salmon] was properly granted leave to amend to restore the bad faith claim.

TCO at 8-9 (internal citations omitted; emphasis in original).

_____

[11] Specifically, in Count II of Ms. Salmon's complaint, she alleged that PCIC engaged in bad faith conduct under 42 Pa.C.S. § 8371.   Section 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

PCIC attacks this ruling, stating that Ms. Salmon "did nothing between the May 2018 dismissal of her statutory bad faith claim and the September 26, 2019 trial date to address her desire to re-plead a bad faith claim, and [she] waited until after the defense rested its case to orally move for amendment." PCIC's Brief at 34. It argues:

> As contrasted to contractual insurance disputes, which are resolved based upon the terms of the insurance contract and an adjudication as to whether certain claims do or do not fall within the relevant coverages, an insurance bad faith claim is, inherently, predicated on the subjective intent and state of mind of the insurance carrier. … New Jersey law requires that a bad faith claimant prove the insurer did not have a "fairly debatable" reason for its position. *See Pickett* [*v. Lloyd's*, 621 A.2d 445, 453-54 (N.J. 1993)].[12]

---

[12] Indeed, the New Jersey Supreme Court has stated:

> A finding of bad faith against an insurer in denying an insurance claim cannot be established through simple negligence. Moreover, mere failure to settle a debatable claim does not constitute bad faith. Rather, to establish a first-party bad faith claim for denial of benefits in New Jersey, a plaintiff must show that no debatable reasons existed for denial of the benefits.
>
> Under the salutary "fairly debatable" standard enunciated in *Pickett*, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim.

*Badiali v. New Jersey Mfrs. Ins. Group*, 107 A.3d 1281, 1288 (N.J. 2015) (internal citations and some internal quotation marks omitted). *See also Pickett*, 621 A.2d at 453 ("To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. … [I]mplicit in that test is our conclusion that the knowledge

From May 2, 2018 onward, discovery and trial proceeded on the issue of a contractual insurance coverage dispute. PCIC cross-examined witnesses and challenged [Ms. Salmon's] evidence based on [that] longstanding reality. PCIC likewise rested its case and relied on the evidence elicited during [Ms. Salmon's] case in chief, given that [she] bore the burden of proof on the issue of entitlement to coverage. It was then ambushed with an amendment to include a bad faith claim *after it rested its case*, and, therein, was denied the opportunity to present witnesses and evidence on this qualitatively different cause of action.

The trial court ruled that PCIC cannot claim this deprivation of its ability to respond to the claim was prejudicial because it did not ask to reopen the record for additional evidence. Yet, the transcript reflects that the amendment was permitted over PCIC's strenuous objections, and the trial court then proceeded directly to closing arguments and rendering of a verdict.

PCIC's Brief at 38-39 (some internal citations omitted). In sum, PCIC claims that "the extra-contractual awards of punitive damages and attorney's fees, which are predicated on the finding of bad faith, were the product of [a] prejudicial and improper amendment which, at a minimum, commands a new trial." *Id.* at 40.

Ms. Salmon counters that PCIC "rests its prejudice argument on allegations that reinstatement of [her] [b]ad [f]aith claim was launched *after* [PCIC] rested its case. It was [PCIC] who chose not to put forth a defense in this action, [and] that is not the fault of [Ms. Salmon]." Ms. Salmon's Brief at 19 (emphasis in original). Ms. Salmon argues that PCIC "merely asserts prejudice arising from undue delay[,]" and says that "Pennsylvania law does

_____

of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless … indifference to facts or to proofs submitted by the insured.") (quoting *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980)).

- 24 -

not recognize such an allegation as a viable means to establish prejudice by way of [a] pleading amendment." ***Id.*** at 19-20.

Our review of the trial transcript reveals that, after PCIC stated that it would be resting, the following occurred at trial:

> [Ms. Salmon's attorney:] And, Your Honor, there actually is -- there is one motion [Ms. Salmon] would have prior to closing, if Your Honor would like to hear it now.
>
> Under Rule 1033, Your Honor, the local rules allows [*sic*] for the amendment of the complaint to be congruent with the evidence that has been provided. Previously, Your Honor, [Ms. Salmon] had filed a bad faith action against [PCIC]. ***That was dismissed without prejudice to allow for discovery.***[13] As the evidence has now been presented, Your Honor, there is really no dispute that there is a viable bad faith claim that should at least be argued as part of [Ms. Salmon's] claim.
>
> As it was already stipulated by [PCIC], there are two areas of damage the defense has stipulated to be owed and owing under the policy, [and] to this date[, PCIC] has provided no payment despite that knowledge and despite that fact. That in and of itself[,] on its face[,] is bad faith and unreasonable. The standard for bad faith, Your Honor, is showing that the defendant has acted unreasonably, that they know that they're being unreasonable and they do it anyway. ***[PCIC] has provided zero evidence to contest what [Ms. Salmon] has been providing … throughout this entire litigation as the owed amounts and has, in fact, already stipulated to the fact that some amounts are owing and [it] hasn't paid that.*** Again, that is clear evidence of bad faith[,] which would allow for an amendment under Rule 1033[,] based on the evidence presented at trial.

---

[13] This assertion is not supported by the record. As mentioned *supra*, Ms. Salmon's bad faith claim was dismissed because the trial court apparently agreed with PCIC that Pennsylvania's bad faith statute does not apply to Ms. Salmon's claims as she is not, and never has been, a Pennsylvania resident, and the at-issue property is located in New Jersey.

THE COURT: All right. Before I hear a response, let me see Rule 1033.

[Ms. Salmon's attorney:] Your Honor, if it would help, I also have a copy of the order dismissing the bad faith [claim] without prejudice.

THE COURT: I'll take that as well. Okay. I'll hear from the defense.

[PCIC's attorney:] Your Honor, the re-initiation of a bad faith claim at the close of evidence is not -- ***it wouldn't be proper because it precludes me from even arguing whether or not our conduct was reasonable or not.*** Our conduct was reasonable at the time, and to bring a --

THE COURT: You can still argue it.

[PCIC's attorney:] Well, that's not true. I can put on evidence as to the -- what we stipulated to, ***our stipulation should not be held against us because we stipulated to it when it was produced to us in discovery. I mean, it was produced to us in discovery. None of this stuff was ever given to us, Judge, and had we known that we were going to be arguing a bad faith case, I would have put a case on to defend against bad faith because our file closed out in April of 2017. We never got another document from them. Ever. We never got a single thing and our people would have testified to that. This is an ambush.***

[Ms. Salmon's attorney:] Your Honor, the rule specifically allows for amendment based on evidence that was presented. ***The only reason we're making that amendment is because [PCIC] has chose[n] to present no evidence regarding the reasonableness of any conduct on [its] part, and, in fact, on its face[,] [it] is unreasonable knowing that there are damages that are owed that [it has] chosen not to pay.***

[PCIC's attorney:] ***Because the reasonableness wasn't at issue. At issue was whether or not the damages were -- fit within the policy.*** There is no evidence that -- for us to be able to have to retry the case as to reasonableness we'd have to -- ***I move for reopening the case.***

THE COURT: ***I don't think that requires re-trial.*** In fact, I am surprised to even hear that bad faith wasn't on the table. Given

the evidence[,] I think that there is ample notice. I think the only thing --

[PCIC's attorney:] Your Honor, actually, if I may, this is a New Jersey policy. All right. ***The reason that the bad faith claim was dismissed without prejudice and my argument was [sic] because they pled the Pennsylvania bad faith statute.*** You cannot, under the case law, you cannot argue, you cannot apply a bad faith claim to a New Jersey policy under the bad faith statute of Pennsylvania. That's what I wanted -- that's actually -- that's case law.

[Ms. Salmon's attorney:] Your Honor, regardless of which statute would be applied does not prevent us under Rule 1033 to amend the pleadings to comply. ***So based on the evidence that we've seen today, specifically under 1033, it says it can be amended based on evidence provided. Judge, I can argue New Jersey bad faith as much as I could PA. I am perfectly fine doing either.*** They both have the same standard in the sense that all I have to prove, Your Honor, is the defendant acknowledged their unreasonableness and continued their conduct anyway.

[PCIC's attorney:] That's not true. I mean, ***the bad faith statute of New Jersey and Pennsylvania are two different things.*** That's why Pennsylvania does not allow New Jersey statutes to -- or New Jersey policies to be subject to the bad faith.

[Ms. Salmon's attorney:] Beyond that, Your Honor, there is a clear breach of good faith and fair dealing[,] which applies to every contract in every state regardless. ***That finding alone doesn't require any statutory argument. It simply requires a showing that the conduct of the defendant under the duty of good faith and fair dealing would be applicable.***

[PCIC's attorney:] ***The count that fraud was pursuant specifically to the statu[t]e. Count two was specifically to the Pennsylvania statute. The preliminary objections that were granted was the statute does not apply to a New Jersey policy.*** It's undisputed this is a New Jersey policy.

[Ms. Salmon's attorney:] Your Honor, what we're seeking to amend is the breach of the duty of good faith and fair dealing. ***We're not bringing up the statute at all.***

> [PCIC's attorney:] That brings up an entirely different legal standard.
>
> THE COURT: I'm permitting the amendment. All right. So with that, I will hear closing arguments.

N.T. at 202-07 (emphasis added).

Based on the foregoing, we determine that the trial court abused its discretion in permitting Ms. Salmon to amend her complaint, given the late amendment's prejudice to PCIC. Prior to trial, Ms. Salmon never amended her complaint to bring a bad faith claim under New Jersey law following the dismissal of her Pennsylvania bad faith claim. As a result, PCIC stipulated to certain damages and chose its trial strategy believing that the only claim it was defending against was for breach of contract. **Accord Rettger**, 991 A.2d at 929 (concluding that certain parties would suffer prejudice because of a late amendment of a pleading at trial, as allowing the amendment would undermine their trial strategies).[14] When PCIC then defended against only

---

[14] To illustrate PCIC's defense strategy at trial, in PCIC's opening argument, it stated that "[t]he dispute here really does amount to what is covered, what was caused by the March 2017 loss, and what was caused by [Ms. Salmon's] failure to correct something that was not covered by the policy, which is, mainly, the pipe replacement." N.T. at 10. In addition, PCIC alleged that "the other issue here is that … you're going to hear Mr. Brown testify that he has no invoices for these repairs[,]" and that "the crux of what we're at here is there is zero proof that this work was done for the prices that were paid." **Id.** at 10-11, 11. **See also id.** at 11 ("[Mr. Brown is] claiming $10,000 worth of electrical work that, I don't know who his licensed electrician is, but he's Venmoing money to people with no actual record of the work performed. There's just six line items that say you owe us $98,000."); **id.** at 12 ("[I]t looks like they just totally renovated the place because the pipe leaked. That's just not the way insurance works. You fix the pipe. You repair the drywall. You fix the flooring, and you move on. In this case, they're asking for new electricity. They put in a new bathroom.").

Ms. Salmon's breach-of-contract claim at trial, Ms. Salmon unfairly used that against it, stating that "[t]he only reason we're making that amendment is because [PCIC] has chose[n] to present no evidence regarding the reasonableness of any conduct on [its] part, and, in fact, on its face[,] [it] is unreasonable knowing that there are damages that are owed that [it has] chosen not to pay." N.T. at 204-05. PCIC explained that it did not present evidence on reasonableness because its conduct was not at issue. *Id.* at 205. Further, PCIC made a request to re-open the case, which the trial denied. *Id.*

Given that PCIC based its trial strategy on defending against a breach-of-contract claim only, the trial court abused its discretion in allowing Ms. Salmon to amend her complaint to add a bad faith claim under New Jersey law after PCIC had rested its case. Accordingly, we reverse the trial court's decision to permit that amendment. Consequently, we also reverse the trial court's award of punitive damages and attorney's fees to Ms. Salmon, which were based upon a finding of bad faith.[15, 16] Judgment should, therefore, be entered in favor Ms. Salmon in the reduced amount of $163,726.17.

_____

[15] The trial court's awards for attorney's fees and punitive damages were based upon Ms. Salmon's bad faith claim. *See* TCO at 13 ("In permitting amendment to restore the bad faith claims, the court also restored the damages which flow from such a claim under New Jersey law. … [T]hose damages include counsel fees."); *id.* at 15 ("[T]he complaint was properly amended to restore punitive damages on the amended bad faith claim."); N.T. at 214-15 (Ms. Salmon's counsel's arguing that when an insurance company acts in bad faith, the court may award attorney's fees and punitive damages).

[16] Given our disposition, we need not address PCIC's remaining issues.

Judgment affirmed in part and reversed in part. The awards of $54,520 in attorney's fees and $75,000 in punitive damages are reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/21